## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL CRISSWELL, individually and on behalf of a class of similarly situated individuals, ) ) ) | FILED<br>March 18, 2008    TG<br>No. 08cv1578 |
| Plaintiff, ) ) ) | Judge SHADUR<br>Magistrate Judge SCHENKIER |
| vs. ) ) | |
| MYSPACE, INC., a Delaware corporation, ) ) | |
| Defendant. ) ) | |

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, as amended in relevant part by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (2005), defendant MySpace, Inc. ("MySpace") hereby removes to the United States District Court, Northern District of Illinois, Eastern Division, the above-styled action, pending as Case No. 08 CH 05929 in the Circuit Court of Cook County, Illinois, Chancery Division (the "State Court Action"). As grounds for removal, MySpace states the following:

### INTRODUCTION

1.     On February 15, 2008, plaintiff Michael Crisswell commenced a putative class action against MySpace. A true and correct copy of the Class Action Complaint is attached hereto as Exhibit 1, and cited here as "Compl." In the Class Action Complaint, Plaintiff alleges that MySpace has sent Plaintiff unauthorized text messages and provided no means for Plaintiff to opt out of receiving future text messages. (Compl. ¶¶ 2, 4, 21-23.) Plaintiff alleges, among other claims, that as a result of these text messages, Plaintiff

has been charged a fee of around $0.15 for the receipt of each text message and has lost all or some of the use of his cell phone. (Compl. ¶¶ 4, 14-15.) Specifically, the Class Action Complaint asserts claims for tortious interference with a contract (Count I), restitution/unjust enrichment (Count II), trespass to chattels (Count III), invasion of privacy (Count IV), computer tampering in violation of 720 ILCS 5/16D-3 (Count V), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VI). (Compl. ¶¶ 32-59.)

## BASIS OF JURISDICTION UNDER CAFA

2.    MySpace moves to remove the State Court Action pursuant to the Class Action Fairness Act ("CAFA"), codified under 28 U.S.C. § 1332(d). CAFA provides this Court with original jurisdiction over this action and permits MySpace to remove the State Court Action from the Illinois state court.

3.    CAFA vests United States District Courts with original jurisdiction when the aggregate amount in controversy for all class members exceeds $5,000,000 exclusive of interest and costs and any member of the class of plaintiffs is a citizen of a state different from any defendant. Those requirements are satisfied in this action, as set forth below in more detail and as established by Plaintiff's Class Action Complaint.

4.    Neither the permissive nor mandatory provisions of CAFA for declining original jurisdiction are applicable to this action. Accordingly, as established in more detail below, federal jurisdiction is mandatory under CAFA.

**Original Jurisdiction.**

5.    CAFA vests United States District Courts with original jurisdiction as follows:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . .

28 U.S.C. § 1332(d)(2).  Each of these requirements is satisfied in this action.

**Class Actions as Defined by CAFA**

6.    The State Court Action is a class action as defined by CAFA.  CAFA provides:

> [T]he term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.

§ 1332(d)(1)(B).

7.    Plaintiff filed the State Court Action as a putative class action on behalf of himself, a Class, and a Sub-Class.  (Compl. ¶ 24.)

8.    The Illinois statute governing the maintenance of class actions, 735 ILCS 5/2-801, is analogous to Federal Rule of Civil Procedure 23.

9.    As set forth above, Plaintiff's Class Action Complaint falls within the definition of a class action under CAFA.

**Citizenship Requirement Under CAFA**

10.    CAFA liberalizes the diversity requirements under traditional diversity jurisdiction by providing that CAFA applies when:

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . .

§ 1332(d)(2)(A).

11.    Plaintiff is a citizen of Illinois.  (Compl. ¶6.)

12.    MySpace is a corporation that is organized under the laws of Delaware with its principal place of business in California.  (Compl. ¶ 7.)

13.    The diversity of citizenship between Plaintiff and MySpace satisfies the diversity requirements of CAFA.  Moreover, while Plaintiff's citizenship satisfies the CAFA diversity requirements, CAFA requires only that the citizenship of "any member of a class" be diverse from "any defendant."  Because Plaintiff's putative multi-state class attempts to include citizens of numerous states, CAFA diversity jurisdiction is further established.

**Amount in Controversy Requirement under CAFA**

14.    CAFA creates original jurisdiction for "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  § 1332(d)(2).  Unlike traditional amount in controversy review, CAFA requires that the claims of individual class members be aggregated:

> In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

28 U.S.C. § 1332(d)(6).

15.     The amount in controversy requirement is met by showing "a reasonable probability that the stakes exceed the minimum." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005); *see also Espinosa v. Philip Morris USA, Inc.*, 2007 U.S. Dist. LEXIS 21135, **6-7 (N.D. Ill. 2007) ("Even when applying conservative estimates to the facts alleged in the complaint, the amount in controversy in this case far exceeds the $5,000,000 threshold for CAFA."). "Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses jurisdiction." *Brill* at 448. The amount in controversy as required by CAFA is met for this action as pleaded.

16.     This Notice of Removal is based solely on the allegations of the Class Action Complaint. In arguing that the plaintiff has alleged facts sufficient to meet the amount in controversy requirement, MySpace does not admit the facts alleged in Plaintiff's Class Action Complaint; even if the facts are true, MySpace does not admit that they state a claim; and even if the facts are true and state a claim, MySpace does not admit that there are any damages. *See id.* at 449 ("The demonstration [for a notice of removal] concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.").

17.     Plaintiff alleges that "due in part to its vast user base (in excess of 100 million users), MySpace has transmitted mass amounts of unauthorized mobile content to the nation's cellular telephone consumers." (Compl. ¶ 17.) Plaintiff alleges that the

charge for receiving unauthorized text messages "ranges around $0.15." (Compl. ¶ 14.) Without admitting Plaintiff's allegations, those allegations establish that if each MySpace user received only one unauthorized text message, the amount in controversy for those claims would be in excess of $15,000,000.00. Plaintiff, however, alleges that his claims are typical of all Class members (Compl. ¶ 25) and that he alone received and was charged for receiving "well over one hundred" text messages from Defendant from October 2007 through December 2007 (Compl. ¶ 21). Plaintiff claims that he and the Class are entitled to "money belonging to Plaintiff and the Class resulting from [MySpace's] billing and collecting of a significant sum in unauthorized mobile content charges." (Comp. ¶ 38.)

18.    The amount in controversy with respect to the claims made by Plaintiff and the putative class members is thus well in excess of $5,000,000.[1] The compensatory damages alleged for unauthorized mobile content charges alone satisfy CAFA's amount in controversy requirement.

19.    Aside from charges incurred from unauthorized text messages, Plaintiff also seeks to collect advertising revenue MySpace has received (Comp. ¶ 38), damages for MySpace's making use of his and the Class's wireless handsets (Compl. ¶ 42),

---

[1] In a strikingly similar Class Action Complaint filed October 22, 2007, in the Northern District of California (San Jose), the same Plaintiffs' counsel alleged: "This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The aggregate claims of plaintiffs and the proposed class members *exceed the sum or value of $5,000,000.*" Class Action Complaint at ¶ 8, *Abrams v. Facebook, Inc.*, Case No. 07-cv-05378-JF (Oct. 22, 2007 N.D. Cal.) (emphasis added) ("Facebook Class Action Complaint" or "Facebook Compl." attached as Exhibit 2). As in the instant case, the Facebook Class Action Complaint includes allegations arising out of alleged unauthorized text messaging. However, Facebook users alleged equal in excess of 34 million (Facebook Compl. at ¶ 21), whereas the instant case involves an allegation of MySpace users in excess of 100 million (Compl. at ¶ 17). Additionally, the Facebook Class Action Complaint alleges the named plaintiff received approximately 20 unauthorized text messages (Facebook Compl. at ¶ 26), whereas the instant Class Action Complaint alleges the named plaintiff received well over 100 unauthorized text messages (Compl. at ¶ 21).

damages for MySpace's intruding on his and the Class's solitude (Compl. ¶ 46), fees obtained while MySpace was allegedly tampering with the handsets and statutory attorney's fees (Compl. ¶ 54), and damages for alleged acts of unfair competition (Compl. ¶ 58).

**Discretionary or Mandatory Declining of Jurisdiction**

20.    CAFA contains additional provisions under which a District Court may or must decline jurisdiction.  § 1332(d)(3) & (4).  However, neither of these provisions applies when the defendant is a citizen of a state other than the forum state.  Because MySpace is not a citizen of Illinois, neither of these provisions applies to this action.

## BASIS OF JURISDICTION UNDER CAN-SPAM ACT

21.    Plaintiff brings a claim for computer tampering in violation of 720 ILCS 5/16D-3 (Count V).  Though Plaintiff alleges claims under Section 5/16D-3(a)(4), which covers programs being inserted on computers, if the facts alleged state any claim (which MySpace does not concede), it is a claim under 5/16D-3(b)(4), which covers unsolicited bulk electronic mail.  Section 5/16D-3(b)(4) makes no mention of falsity or deception.

22.    The federal CAN-SPAM Act "supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto."  15 U.S.C. § 7707(b)(1).

23.    Federal courts have ruled that the CAN-SPAM Act preempts state statutes that attempt to regulate the use of electronic mail to send commercial messages without

prohibiting falsity or deception. *See Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 353-56 (4th Cir. 2006) (holding that CAN-SPAM Act preempted an Oklahoma statute regulating electronic mail messages); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1094 (N.D. Cal. 2007) (holding that CAN-SPAM Act preempted a California statute regulating electronic mail without requiring falsity or deception as an element); *Gordon v. Virtumundo, Inc.*, 2007 U.S. Dist. LEXIS 35544 **34-40 (D. Wash. 2007) (holding that CAN-SPAM Act preempted Washington's Commercial Electronic Mail Act when plaintiff's claims did not allege any false information); *see also Kleffman v. Vonage Holdings Corp.*, 2007 U.S. Dist. LEXIS 40487 (D. Cal. 2007) (holding that CAN-SPAM Act preempted California statute).

24.     The courts in *Omega* and *Gordon* also found that the CAN-SPAM Act preempted consumer protection act claims when the claims' basis was harm alleged under the electronic message claim. *Omega* at 352 n.1; *Gordon* at *41.

25.     Even if a plaintiff pleads only state causes of action, the claims that come within the scope of the federal cause of action necessarily "arise under" federal law for federal question purposes when the federal cause of action has powerful preemptive force. *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003) (*quoting Franchise Tax Bd.*, 463 U.S. 1, 23-24 (1983)).

26.     CAN-SPAM Act preemption is as complete as to unsolicited bulk electronic mail as the Labor Management Relations Act is to collective bargaining, *see Id.* at 6 (*citing Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968)), ERISA is to employee disability benefits, *see id.* at 7 (*citing Metropolitan Life Ins. Co. v. Taylor*, 481

U.S. 58 (1987)), the Federal Communications Act is to telephone rate challenges, *see Bastien v. AT&T Wireless Servs.*, 205 F.3d 983, 990 (7th Cir. 2000), the Indian Gaming Regulatory Act is to American Indian gaming, *see Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 547 (8th Cir. 1996), and the Nonintercourse Act is to American Indian land grant rights, *see Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974).

27.    Plaintiff's computer tampering and consumer protection claims are completely preempted by the CAN-SPAM Act, give rise to federal question jurisdiction, and should be removed, on this additional, alternative ground.

## 28 U.S.C. § 1446 REQUIREMENTS

28.    <u>Removal is Timely</u>.  A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other paper from which it may be ascertained that the case is removable.  28 U.S.C. § 1446(b).  Defendant received a copy of the initial pleading when it was served with the Complaint on February 18, 2008.  This Notice of Removal is timely filed on or before March 19, 2008.

29.    <u>Removal to Proper Court</u>.  This Court is part of the "district and division embracing the place where" this action was filed – Cook County, Illinois.  28 U.S.C. §§ 1446(a).

30.    <u>Pleadings and Process</u>.  Pursuant to 28 U.S.C. § 1446(a), a "copy of all process, pleadings, and orders served upon" Defendant is attached to this Notice of Removal as Exhibit 1.  Defendant MySpace has not answered or otherwise filed a response to the Class Action Complaint.

31.    <u>Notice to the State Court</u>.  A copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Cook County, Illinois, and is being served on counsel of record, consistent with 28 U.S.C. §§ 1446(a), (d).  The Circuit Court of Cook County, Illinois is located within this District.

32.    Defendant MySpace hereby reserves all defenses and objections to Plaintiff's Class Action Complaint, including but not limited to:  lack of personal jurisdiction, improper venue, *forum non conveniens*, insufficiency of process, insufficiency of service of process, failure to state a claim, and failure to satisfy the requirements for class certification.

WHEREFORE, defendant MySpace, Inc. removes this action to this Court for further proceedings according to law.

Dated:  March 18, 2008

<div style="margin-left: 3em;">

Respectfully submitted,

MYSPACE, INC.


By:   /s/ David R. Geerdes
     One of its attorneys

</div>

Blaine C. Kimrey (ARDC # 6279625)
David R. Geerdes (ARDC # 6289557)
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, Illinois  60606
(312) 876-8000

## <u>CERTIFICATE OF SERVICE</u>

I am an attorney and hereby certify that on March 18, 2008, I caused true copies

of the foregoing NOTICE OF REMOVAL to be served by messenger upon the following

counsel for Plaintiff:

Myles McGuire
KAMBEREDELSON, LLC
53 W. Jackson Blvd.
Suite 1530
Chicago, IL 60604


 /s/ David R. Geerdes
David R. Geerdes
Attorney for defendant MySpace, Inc.

March 18, 2008   TG
08cv1578
Judge SHADUR
Magistrate Judge SCHENKIER

# EXHIBIT 1



CORPORATION SERVICE COMPANY®

**SXY / ALL**
**Transmittal Number: 5605999**
**Date Processed: 02/18/2008**

# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Tami Fortier-Gomez<br>Fox Entertainment Group, Inc.<br>2121 Avenue Of The Stars<br>Suite 700<br>Los Angeles, CA 90067 |

| | |
|---|---|
| **Entity:** | MySpace, Inc.<br>Entity ID Number  2406469 |
| **Entity Served:** | Myspace, Inc. |
| **Title of Action:** | Michael Crisswell vs. Myspace, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Other |
| **Court:** | Cook County  Circuit Court, Illinois |
| **Case Number:** | 08CH05929 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 02/18/2008 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney:** | Myles McGuire<br>312-589-6370 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS    CCG N001-10M-1-07-05 (                    ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, __CHANCERY__ DIVISION

(Name all parties)

Crisswell, Michael

v.

MySpace, Inc.

}

No. __08CH 05929__

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room __802__, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL  60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL  60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL  60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL  60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL  60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois  60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: __44146__

Name: __Myles McGuire__

Atty. for: __Plaintiff__

Address: __53 West Jackson Boulevard, Ste. 1530__

City/State/Zip: __Chicago, Illinois 60604__

Telephone: __(312) 589-6370__

Service by Facsimile Transmission will be accepted at: _____

WITNESS, __FEB 15 2008__, _____

_____
Clerk of Court
DOROTHY BROWN

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

_____    _____
(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

(Rev. 12/4/00)  CCCH 0623

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT /CHANCERY DIVISION

Crisswell, Michael
_____
                                    **Plaintiff**

                v.

MySpace, Inc.
_____
                                    **Defendant**

Case No. **08CH05929**
_____

## CHANCERY DIVISION CIVIL COVER SHEET

A Chancery Division Civil Cover Sheet shall be filed with the initial complaint in all actions filed in the Chancery Division. The information contained herein is for Administrative purposes only and shall not be introduced into evidence. Please check the box in front of the appropriate category which best characterizes your action being filed.

| | | |
|---|---|---|
| 005 | _____ | Administrative Review |
| 006 | _____ | Change of Name |
| 001 | ✓ | Class Action |
| 002 | _____ | Declaratory Judgment |
| 004 | _____ | Injunction |
| 008 | _____ | Mechanic's Lien |
| 003 | _____ | Mortgage Foreclosure |

| 007 | _____ | General Chancery |
|---|---|---|
| | _____ | Accounting |
| | _____ | Arbitration Awards |
| | _____ | Certiorari |
| | _____ | Dissolution of Corporation |
| | _____ | Dissolution of Partnership |
| | _____ | Equitable Lien |
| | _____ | Interpleader |
| | _____ | Mandamus |
| | _____ | Ne Exeat |

| | |
|---|---|
| _____ | Partition |
| _____ | Quiet Title |
| _____ | Quo Warranto |
| _____ | Redemption Rights |
| _____ | Reformation of a Contract |
| _____ | Rescission of a Contract |
| _____ | Specific Performance |
| _____ | Trust Construction |
| _____ | Other _____ |

By: _____
                    **Attorney**                    **Pro Se**

Atty. No.: 44146
_____

Name: KamberEdelson, LLC
_____

Atty. for: Plaintiff
_____

Address: 53 West Jackson Boulevard, Ste. 1530
_____

City/State/Zip: Chicago, Illinois 60604
_____

Telephone: (312) 589-6370
_____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MICHAEL CRISSWELL, individually and on )
behalf of a class of similarly situated individuals, )
           )
            Plaintiff, )      No. 08CH05929
           )
            v. )
           )
MYSPACE, INC., a Delaware corporation, )
           )
           )      **Jury Trial Demanded**
            Defendant. )
-------------------------------------------------------------x

## CLASS ACTION COMPLAINT

Plaintiff Michael Crisswell brings this class action complaint against Defendant

MySpace, Inc. ("MySpace") to stop defendant's practice of transmitting unauthorized text

messages to the wireless devices of consumers nationwide, and to obtain redress for all persons

injured by its conduct. Plaintiff, for his class action complaint, alleges as follows upon personal

knowledge as to himself and his own acts and experiences, and, as to all other matters, upon

information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1.       In an on-going effort to attract users to its website, MySpace, a social networking

company that has gained popularity by linking students and other groups through its website,

engaged in a mobile marketing service. Through this service, members can, with a few clicks of

the computer mouse, have MySpace send text messages to the cellular telephones of virtually

any person, irrespective of whether such person has consented to receive such text messages.

2.       Through intentional design or gross negligence, MySpace's system has a

significant flaw: the system sends text messages to the cell phone numbers entered by a

1

particular member, without regard to whether the recipient wants to receive the text messages. Further, because MySpace refuses to tell recipients how to opt-out of receiving future text messages, MySpace's system has become a safe haven for spammers.

3.      MySpace's system has created a number of significant problems.  First, individuals' privacy rights are being compromised.  Cell phone users are now being bombarded with invitations to parties by people they do not know, requests to be designated a "friend" on MySpace's website, and other often obscure, graphic and adult-oriented messages.  These text messages come during all times of the day or night and because the senders are often hard to identify, can be seen as intimidating, unsettling and even threatening.

4.      Additionally, recipients of these text messages invariably pay to receive these text messages, even though they are completely unauthorized and unwelcome.

5.      In order to redress these injuries, Plaintiff brings suit seeking, *inter alia,* monetary damages and injunctive relief.

**PARTIES**

6.      Plaintiff Michael Crisswell is a citizen of Illinois.

7.      Defendant MySpace, Inc. is an online social networking company that distributes "mobile content," such as user-generated blog entries, friend requests, news and other data (collectively, "content") to cellular telephones.  MySpace is a Delaware corporation with its headquarters and principal place of business in California.  It does business throughout the country and this County.

**VENUE**

8.      Venue is proper in Cook County because Defendant does business in Cook County.

2

## CONDUCT COMPLAINED OF

9.      In recent years, as social-networking has grown increasingly popular on the internet, many companies in the industry have released mobile versions of their service ("Mobile Service") which involve the transmission of user-created content in the form of text messages to fellow users and others exclusively through their cellular telephones.

10.     In or about 2006, Defendant MySpace developed such a system it called MySpace Mobile.

11.     Defendant's Mobile Service employs technology known as Short Message Services ("SMS"), which is a content delivery system that allows owners of wireless devices, such as cellular telephones, to send and receive short text messages, usually limited to 160 or so characters.

12.     Defendant's Mobile Service works primarily by converting messages posted by users on the MySpace website into commercial SMS text messages which MySpace then automatically transmits to cellular telephones. In so doing, MySpace exercise controls over the text messages by, inter alia, changing both their format and content before transmission.

13.     In order to obtain the necessary technical expertise and billing relationships required to operate its Mobile Service, MySpace, by itself or through its agents such as m-Qube, Inc., partnered with traditional cellular telephone carriers.

14.     MySpace and/or its partners profit from the Mobile Service by charging the recipient a fee for the transmission of each item of mobile content. Such fee varies in amounts but ranges around $0.15 that the recipient must pay for the receipt of each text message sent by MySpace. Recipients are charged such fees even if they did not consent to receive such text messages. Defendant and its partners levy additional fees for mobile content that appear on consumers' cellular telephone bills as separate line item charges. Many of these charges are similarly unauthorized.

3

15.    In addition to such fees, MySpace's text message content causes wireless devices to slow down, takes up bandwidth over a wireless connection, uses up the memory of the device, and frustrates cell phone users. The unauthorized spam decrease productivity by requiring that hours be spent on figuring out how to stop the content from being placed on one's wireless device and how to get the content off one's cell phone. The cumulative impact of not only multiple unwanted text messages, but also the threat of their continued receipt, impedes the use of wireless devices.

16.    MySpace provides no safeguard to ensure that recipients are not receiving and paying for text messages they did not authorize.

17.    As a consequence, due in part to its vast user base (in excess of 100 million users), MySpace has transmitted mass amounts of unauthorized mobile content to the nation's cellular telephone consumers since instituting its Mobile Service.

18.    If MySpace wanted to protect the public from receiving unauthorized text messages, it could do so in an instant by, for example, ensuring that each text message effectively identifies the member associated with such message and by providing a clear and conspicuous manner for recipients to opt-out of receiving future text messages.

## THE FACTS RELATING TO THE NAMED PLAINTIFF

19.    In or about 2003, Plaintiff purchased new cell phone service for his personal use from an established cellular telephone carrier and partner in Defendant's mobile service.

20.    On that same day, in exchange for a cellular telephone service plan, Plaintiff agreed to pay a monthly fee for a period of approximately 12 months.

21.    Beginning on or about October 2007 and continuing through about December 2007, Plaintiff's cell phone account was charged repeatedly for receiving well over one hundred

4

text messages from Defendant. For instance, on or about December 2007, Plaintiff received such mobile content in the form of the following text messages from Defendant:

> "MSG: MySpace friend request
> I aint doing this shit for no stand n [sic] ovation
> would like to be added as one of your friends!"

> "MSG: MySpace Message
> Reggie Dub present amatuer night at da soft touch!"

22.    At no time did Plaintiff consent to Defendant's sending of text messages to his cellular telephone.

23.    Despite repeated attempts over several weeks that consumed dozens of man-hours, Plaintiff was unable to find any clear way to opt-out of receiving future text messages from Defendant.

## CLASS ALLEGATIONS

24.    Plaintiff brings this action on behalf of himself and a class ("Class") and Sub-Class, defined as follows:

(A) A Class ("Class") consisting of all wireless telephone subscribers in the nation who suffered losses or damages as a result of incurring charges on their cellular telephone bills from or on behalf of Defendant MySpace not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the Defendant, and (ii) any employee of a defendant.

(B) A Sub-Class ("Sub-Class") consisting of all members of the Class residing in the State of Illinois.

25.    The claims of Plaintiff are typical of the claims of all of the other members of the Class and Sub-Class.

5

26.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the classes, and have the financial resources to do so.  Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the classes.

27.     Absent a class action, most members of the classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

28.     Defendant has acted and failed to act on grounds generally applicable to the plaintiff and the other members of the classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the classes.

29.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the classes are the same, resulting in injury to the Plaintiff and to all of the other members of the classes.  Plaintiff and the other members of the classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

30.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the classes, and those questions predominate over any questions that may affect individual members of the classes.  Common questions for the Class include but are not limited to the following:

6

(a)     Whether Defendant tortiously interfered with contracts between Plaintiff and the Class, on the one hand, and their wireless carriers, on the other hand, by causing them to be charged for products and services by their carrier that were unauthorized.

(b)     Whether Defendant has unjustly received money belonging to Plaintiff and the Class and whether under principles of equity and good conscience, Defendant should not be permitted to retain it;

(c)     Whether MySpace transmission of unauthorized content to the wireless devices of Plaintiff and the Class amounts to trespass to chattels;

(d)     Whether Defendant's transmission of unauthorized content to the wireless devices of Plaintiff and the Class amounts to invasion of privacy.

31.    Common questions for the Sub-Class include:

(a)        Whether MySpace's conduct described herein is computer tampering in Violation of 720 ILCS 5/16D-3;

(b)        Whether MySpace's conduct described herein violates the Illinois Consumer Fraud and Deceptive Business Practices Act.

## COUNT I
### (Tortious Interference with a Contract on behalf of the Class)

32.    Plaintiff incorporates by reference the foregoing allegations.

33.    Plaintiff and the Class had contractual relationships with their wireless carriers whereby they agreed to pay a certain sum of money in exchange for activation of their cellular telephone accounts and their carriers' promise to provide various communication and related services to Plaintiff and the Class and to bill Plaintiff and the Class only for products or services the purchase of which they had authorized.

7

34.    Defendant knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

35.    Defendant intentionally interfered with said contractual relationships through improper motives and/or means by knowingly and/or recklessly continually causing to be placed on the cellular telephone bills of cellular telephone owners across the nation unauthorized charges.

36.    Plaintiff and the Class suffered loss as a direct result of the conduct of Defendant.

## COUNT II
### (Restitution/Unjust Enrichment on behalf of the Class)

37.    Plaintiff incorporates by reference the foregoing allegations.

38.    A benefit has been conferred upon Defendant by Plaintiff and the Class. Defendant has received and retains money belonging to Plaintiff and the Class resulting from its billing and collecting of a significant sum in unauthorized mobile content charges, advertising revenue and related earnings.

39.    Defendant appreciates or has knowledge of said benefit.

40.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Class which it has unjustly received as a result of its actions.

## COUNT III
### (Trespass to Chattels on behalf of the Class)

41.    Plaintiff incorporates by reference the foregoing allegations.

42.    At all relevant times, Defendant and/or its agents intentionally and without consent, gained access to Plaintiff's wireless handset and the handsets of the class, used Plaintiff's wireless handset and the handsets of the class, occupied memory of these handsets,

8

and/or dispossessed Plaintiff and the members of class of unencumbered access to their wireless handsets.

43.    In so doing, Defendant intentionally intermeddled with, damaged, and deprived Plaintiff and the class of their wireless handsets, or a portion thereof.

## COUNT IV
### (Invasion of Privacy on behalf of the Class)

44.    Plaintiff incorporates by reference the foregoing allegations.

45.    Wireless handsets provide users with apparent seclusion, solitude and privacy.

46.    MySpace intentionally intruded upon the solitude and seclusion of Plaintiff and the class by invading the privacy of wireless handset use through its transmission of unauthorized mobile content to such handsets.

47.    The invasion by MySpace would be highly offensive to a reasonable person and damaged Plaintiff and the members of class.

48.    Likewise, by causing charges based on unauthorized products and services, MySpace wrongfully appropriated Plaintiff's and the members of class's personalty for commercial use.

## COUNT V
### (Computer Tampering in Violation of 720 ILCS 5/16D-3 on behalf of the Sub-Class)

49.    Plaintiff incorporates by reference the foregoing allegations.

50.    The cellular phones owned by Plaintiff and the other class members are sophisticated electronic devices which accept, process, store, retrieve and output data, and contain many (if not most) of the same capabilities and equipment as traditional desktop

computers (in addition to cellular radio signal processing technology). These cellular phones are computers under the definition of 720 ILCS 5/16D-2(a).

51.     Likewise, the mobile content alleged in this Complaint is a program under the definition of 720 ILCS 5/16D-2(b); a series of coded instructions or statements accepted by class members' cellular phones, which cause the computer to process data and supply the results of the data processing (by, inter alia, displaying the mobile content).

52.     Plaintiff and the other class members' cellular service will be terminated unless they pay additional fees for the receipt of the unauthorized mobile content, whether they authorized that mobile content or not. Through the conduct alleged above, Defendant violates 720 ILCS 5/16D-3(a)(4) by knowingly participating in and/or facilitating the insertion of mobile content into class members' cellular phones without the permission of the cellular phones' respective owners, knowing and/or having reason to believe that the insertion of the unauthorized mobile content will or may cause loss to the users of that cellular phone.

53.     Plaintiff and the other class members are damaged by those violations. Defendant's violations of 720 ILCS 5/16D-3(a)(4) cause the Plaintiffs and the other class members to pay charges for mobile content services to which they did not consent. Defendant's violations of 720 ILCS 5/16D-3(a)(4) further damage Plaintiffs and other class members by causing them to pay falsely inflated cellular telephone bills to their cellular telephone carriers, as well as the lost time required to sort, read, discard and attempt to prevent future charges for unwanted mobile content services, and lost storage space, connectivity, and computing resources on the cellular phones.

54.     Plaintiff, on his own behalf and behalf of the other class members, seeks appropriate relief (including damages in an amount to be determined at trial, and injunctive relief

or other equitable relief, such as an accounting, and disgorgement of fees obtained while these violations were ongoing), as well as reasonable attorney's fees and other litigation expenses, against Defendant under 720 ILCS 5/16D-3(c).

### COUNT V
### (Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act on Behalf of the Sub-Class)

55. Plaintiff incorporates by reference the foregoing allegations.

56. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") declares unlawful "any [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

57. Defendant violated, and continues to violate this proscription through its conduct alleged above, as set forth above.

58. Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the proposed class. Plaintiff and the members of the class asked that this Court restore this money to Plaintiff and enjoin Defendant from continuing its illegal practices.

59. Such conduct is ongoing and continues to this date. Plaintiff, the class members and the general public are therefore entitled to the relief described herein.

WHEREFORE, Plaintiff Michael Crisswell, on behalf of himself, the Class and Sub-Class, prays for the following relief:

11

a.   Certify this case as a class action on behalf of the Classes as defined above and appoint Michael Crisswell Class Representative, and appoint, KamberEdelson, LLC as lead counsel;

b.   Enter judgment against MySpace for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the Class exemplary damages;

c.   Enter judgment against MySpace for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct;

d.   Award Plaintiff and the Classes reasonable costs and attorneys' fees;

e.   Award Plaintiff and the Classes pre- and post-judgment interest;

f.   Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

g.   Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

February _15_, 2008

Michael Crisswell, individually and on behalf of a class of similarly situated individuals

One of his attorneys

Jay Edelson
Myles McGuire
Steven Lezell
KAMBEREDELSON, LLC
53 West Jackson Boulevard
Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370
Firm ID: 44146

12

March 18, 2008    TG
08cv1578
Judge SHADUR
Magistrate Judge SCHENKIER

# EXHIBIT 2

ADR

E-FILING

ALAN HIMMELFARB (State Bar # 90480)
KAMBEREDELSON, LLC
2757 Leonis Boulevard
Vernon, California 90058
Telephone: (323) 585-8696

JAY EDELSON (pro hac vice pending)
MYLES MCGUIRE (pro hac vice pending)
ETHAN PRESTON (pro hac vice pending)
KAMBEREDELSON, LLC
53 West Jackson Boulevard
Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

Filed

OCT 22 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

LINDSEY ABRAMS, individually and on
behalf of a class of similarly situated
individuals,

                Plaintiff,

v.

FACEBOOK, INC., a Delaware corporation,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **C07 05378 PVT**

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF**

DEMAND FOR JURY TRIAL

**CLASS ACTION**

**BY FAX**

### CLASS ACTION COMPLAINT

Plaintiff Lindsey Abrams brings this class action complaint against defendant
Facebook, Inc. ("Facebook") to stop defendant's practice of transmitting or permitting to be
transmitted unauthorized text messages to the wireless devices of consumers nationwide, and
to obtain redress for all persons injured by its conduct.   For her class action complaint,

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE CASE

1.     In an on-going effort to attract users to its website, Facebook, a self-described "social utility" that has gained popularity by linking students and other groups through its website, engaged in a mobile marketing service called "Facebook Mobile." Through Facebook Mobile, members can, with a few clicks of the computer mouse, send text messages -- often containing adult content -- to the mobile phone numbers associated with other members.

2.     However, through either intentional design or gross negligence, Facebook's system has a significant flaw:  the system sends text messages to the cell phone numbers entered by a particular member, without regard to whether that member actually still uses that cell phone number.  Because cell phone numbers are reassigned to new users after the previous user closes her or her account, Facebook's flaw has resulted in the transmission of thousands of unauthorized text messages to the wireless phones of consumers across the nation.

3.     Facebook's system has created a number of significant problems.  First, individuals' privacy rights are being compromised.  New cell phone users are now being assailed with invitations to parties by people they do not know, requests to be designated a "friend" on Facebook's website, and other often obscure and graphic messages.  These messages can come during all times of the day or night and, because the senders are often hard to identify, can be seen as intimidating or unsettling.

4.     This issue is all the more pronounced because children are among those who receive phone numbers previously associated with Facebook's members. As such, adults

1   seeking sexual encounters or other types of adult activities end up inadvertently text

2   messaging young children.

3        5.     Additionally, recipients of these text messages often have to pay to receive

4   these text messages, even though they are completely unauthorized and unwelcome.

5   In order to redress these injuries, Abrams, on behalf of herself and a nationwide class, brings

6   suit under the California Computer Crime Law, Cal. Pen. Code § 502, California's Unfair

7   Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and the common law and seeks

8   an immediate injunction against Facebook.

9   <div align="center">**PARTIES**</div>

10        6.     Plaintiff Lindsey Abrams is a mother of a young child.  She is a citizen of

11   Indiana.

12        7.     Defendant Facebook, Inc. is a self-described social networking company

13   located in California. It is a Delaware company with its principal place of business in

14   California, and it conducts business throughout the United States.

15   <div align="center">**JURISDICTION**<br>**VENUE AND JURISDICTION**</div>

16

17        8.     This Court has subject matter jurisdiction over this action pursuant to 28

18   U.S.C. § 1332.  The aggregate claims of plaintiffs and the proposed class members exceed

the sum or value of $5,000,000.00.

19        9.     This Court also has personal jurisdiction over defendants because (a) a

20   substantial portion of the wrongdoing alleged in this complaint took place in this state, (b)

21   defendant Facebook Inc.'s principle place of business is located in this state, and (c)

22   defendant is authorized to do business here, has sufficient minimum contacts with this state,

23   and/or otherwise intentionally avails itself of the markets in this state through the promotion,

24   marketing and sale of its products in this state, to render the exercise of jurisdiction by this

25   Court permissible under traditional notions of fair play and substantial justice.

26        10.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c).  A

27   substantial portion of the events and conduct giving rise to the violations of law complained

28

<div align="center">**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**</div>

of herein occurred in this District, defendant Facebook Inc.'s principle executive offices and headquarters are located in this District at 156 University Avenue, Palo Alto, CA 94301.

## INTRADISTRICT ASSIGNMENT

11.     Intra district assignment to the San Jose Division is proper because the principal offices of defendant Facebook Inc, is located in Santa Clara County.

## THE CONDUCT COMPLAINED OF

12.     In recent years, as social-networking has grown increasingly popular on the internet, many companies in the social-networking industry have released mobile versions of their service ("Mobile Service") which involve the transmission of user-created content in the form of text messages to fellow users exclusively through their wireless devices.

13.     In or about April 2006, Defendant Facebook and its partner cellular telephone carriers ("carriers") jointly released a "Mobile Service" for Facebook's users called Facebook Mobile.

14.     Defendant's Mobile Service employs technology known as Short Message Services ("SMS"), which is a content delivery system that allows owners of wireless devices, such as cell phones, to send and receive short text messages, usually limited to 160 or so characters.

15.     Defendant's Mobile Service works primarily by converting messages posted by users on the Facebook website into commercial SMS text messages which are then automatically transmitted to the wireless devices of other Facebook users.

16.     In order to obtain the necessary technical expertise and billing relationships required to operate its Mobile Service, Facebook, by itself or through its agents, partnered with traditional cellular telephone carriers.

17.     Facebook and/or its partners profit from the Mobile Service by charging the recipient a fee for the transmission of each item of wireless content. Such fee varies in amounts but ranges around $0.15 that the recipient must pay for the receipt of each text

1    message sent by Facebook. Recipients are charged such fee even if they did not consent to

2    receive such text messages.

3        18.    As a part of their normal business practice, Facebook's carrier partners

4    routinely reissue (or "recycle") wireless phone numbers assigned to the wireless devices of

5    former customers to new customers who open new cellular telephone accounts. Because it

6    and its partners would lose valuable revenue, Facebook has knowingly permitted its system

7    to operate in a way so as to ensure that unauthorized content is transmitted to the wireless

8    devices of consumers who have received a wireless device encumbered with Facebook

9    Mobile.

10        19.    The instant lawsuit flows from what happens when Facebook cooperates with

11    its wireless carrier partners when a wireless number of a Facebook user is recycled to a non-

12    Facebook user, resulting in Facebook's transmission of unauthorized content to the wireless

13    devices of consumers nationwide.

14        20.    Wireless phone number recycling is a serious problem that is not limited to a

15    small group of customers. Indeed, it has been a well known and recurring problem that

16    companies at all levels within the wireless industry have conveniently ignored to their benefit

17    for several years. According to publicly available information from the Federal

18    Communications Commission, millions of cell phone numbers were recycled in 2006 alone.

19        21.    As a consequence, due in part to its vast user base (in excess of 34 million),

20    Facebook has transmitted mass amounts of unauthorized content to the nation's cellular

21    telephone consumers since instituting its Mobile Service in 2006.

22        22.    If Facebook wanted this practice to stop, it could do so immediately by

23    instituting a regular communication policy with its carrier partners to ensure that the wireless

24    numbers Facebook has on file for its users stay current and have not been recycled by its

25    carrier partners to a new cellular telephone consumer who has not consented to receive

26    Facebook content.

27

28

1    23.    On information and belief, Facebook transmits tens of thousands, if not

2    hundreds of thousands, of text messages to consumers' wireless devices throughout the

3    nation every day.

4    24.    Beginning in or about April, 2006, and continuing through to the present,

5    Facebook and/or its authorized partners, agents, vendors, or contractors, knowingly and

6    intentionally accessed and charged the wireless devices of consumers nationwide without

7    authorization, including the repeated delivery of and charging for unauthorized content to the

8    cellular telephone owned by Plaintiff.

9    25.    On or about November 26, 2006, Plaintiff Lindsey Abrams opened a new

10   wireless telephone account with Verizon Wireless, a Facebook Mobile carrier partner. At that

11   time, Plaintiff was assigned wireless phone number which, it was later determined, was

12   encumbered with Facebook's Mobile Service.

13   26.    Beginning shortly after opening her cell phone account and continuing

14   through February 2007, Plaintiff's cell phone received approximately 20 unauthorized text

15   messages from Facebook.

16   27.    The "from" field of such transmissions contained only the following cryptic

17   term: "32665," which was later confirmed to belong to Facebook's Mobile Service. The

18   bodies of a sampling of those text messages read as follows:

19        a.    "Jacob [last name redacted] (Purdue) wrote on your wall:  Hey not much , ,

20              just the same ol SH** [expletive redacted in part] yeah you haven't poked me

21              in a whole!  lol . . . what are you up to?"

22        b.    "Lauren [last name redacted] wrote on your wall:  well i see, u want to teach

23              me?  Reply to msg Lauren back."

24        c.    "Zeph [last name redacted] has requested to add you as a friend.  Reply 'a' to

25              add, or 'info' to get profile."

26

27

28

<div align="center">

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

6

</div>

1        d.   "Facebook msg from Damon [last name redacted] (Indianapolis, IN) Subj; re:

2           hey hey you..well just haven't talked to u in like awhile...thought i'd drop in

3           a...('n' for next)"

4    28.    At no time did Plaintiff consent to receive such text messages from Facebook.

5    29.    Plaintiff's cellular service provider, Verizon Wireless, a partner in

6 Defendant's Mobile Service, charged Abrams $0.10 for each such Facebook transmission,

7 causing her wireless phone account to slip into arrears, thereby requiring Plaintiff to deposit

8 additional funds with Verizon Wireless in order to prevent deactivation of her cell phone

9 service. When Plaintiff asked a Verizon representative how she could stop the receipt of such

10 Facebook transmissions, Verizon informed Plaintiff that her only option was to deactivate all

11 text message functionality on her phone. Because Plaintiff did not want to lose the ability to

12 send and receive text messages that she authorized, she declined to discontinue such part of

13 her cell phone service.

14    30.    Facebook knowingly accessed and obtained information from Plaintiff's

15 wireless device through its transmission of such unauthorized content.

16    31.    Upon information and belief, the unauthorized content transmitted to

17 Plaintiff's wireless device was one of thousands delivered to the wireless devices of persons

18 around the United States, in the same fashion and by the same means as those received by

19 Plaintiff.

20                **Damage Caused by Defendant's Unlawful Conduct**

21    32.    In addition to the fees discussed above and other related fees assessed by

22 carriers, Facebook's text message content causes wireless devices to slow down, takes up

23 bandwidth over a wireless connection, uses up the memory of the device, and frustrates cell

24 phone users. The unauthorized text messages decrease productivity by requiring that hours be

25 spent on figuring out how to stop the content from being placed on one's wireless device and

26 how to get the content off one's cell phone. The cumulative impact of not only multiple

27

28

1  unwanted text messages, but also the threat of their continued receipt, impedes the use of

2  wireless devices.

3       33.    More significantly, Facebook's misconduct invades the privacy rights of

4  potentially hundreds of thousands of people.  Such persons are receiving unwanted text

5  messages at all times of the day and night.  As experienced by Ms. Abrams, these text

6  messages can contain adult or graphic language or requests for intimate encounters.

7       34.    This problem is all the more serious because, as Facebook knows, many of the

8  recipients of these graphic text messages are young children.  Receiving solicitations to

9  "teach me," reminders that the sender has not been "poked" in awhile, invitations to college

10  parties, or requests to be added to the sender's list of "friends," can be both frightening and

11  dangerous.

## CLASS ALLEGATIONS

14       35.    Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal

15  Rules of Civil Procedure, on behalf of herself and a class defined as follows:

16            a.   All persons or entities residing in the United States

17                 who, at any time since April 2006, received a text

18                 message on their mobile telephone through Facebook

19                 Mobile, who did not authorize Facebook Mobile to

20                 send messages to their telephone number.

20  Excluded from the class are defendant, any entity in which defendant has a controlling

21  interest or which has a controlling interest in defendant, and defendant's legal

22  representatives, predecessors, successors, assigns, and employees.  Also excluded from the

23  class are the judge and staff to whom this case is assigned, and any member of the judge's

24  immediate family.

25       36.    Plaintiff reserves the right to revise this definition of the class based on facts

26  she learns during discovery.

27       37.    Plaintiff is a member of the class that she seeks to represent.  Members of the

28

class can be identified using defendant's records of Facebook Mobile services and other information that is kept by defendant in the usual course of business and/or in the control of defendant. Class members can also be notified of the class action through publication and direct mailings to address lists maintained in the usual course of business by defendant.

38. **Numerosity**: Class members are so numerous that their individual joinder is impracticable. It is estimated that the Class consists of thousands of members. The precise number of class members is unknown to plaintiff, but it is clear that the number greatly exceeds the number to make joinder impossible.

39. **Existence and predominance of common questions**: Common questions of law and fact predominate over the questions affecting only individual class members. Some of the common legal and factual questions include:

   a. Whether defendant profits from Facebook Mobile messages sent to mobile telephones;

   b. Whether defendant knew or should have known that the Facebook Mobile messages were being sent to mobile telephone users who had not authorized such messages;

   c. Whether Defendant's conduct described herein violates Cal. Pen. Code § 502(c)(3), California's Computer Crime Law.

   d. Whether Defendant has unjustly received money belonging to Plaintiff and the Class and whether under principles of equity and good conscience, it should not be permitted to retain it;

   e. Whether Defendant's conduct described herein amounted to trespass to chattels on behalf of Plaintiff and the Class;

   f. Whether Defendant's conduct described herein violates California Cal. Bus. & Prof. Code § 17200, California's Unfair Competition Law; and

g.  The nature and extent of damages and other remedies to which the conduct of defendant entitles the class members.

40.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison to the numerous common questions that dominate.

41.  The injuries sustained by the class members flow, in each instance, from a common nucleus of operative facts.  In each case defendant caused or permitted unauthorized text messages to be delivered to the telephone of a user who did not authorize receipt of such services.

42.  The class members have been damaged by defendant's' misconduct.  Class members must pay for receipt of text messages, even messages they do not want.

43.  **Typicality**:  Plaintiff's claims are typical of the claims of the other proposed class members.  Plaintiff obtained a telephone capable receiving text messages.  Plaintiff released her telephone number to those persons to whom she provided authorization to send her text messages.  She did not authorize Facebook Mobile to send, either from itself or from its members, any text messages to her telephone.  To the extent that text messages were received on her telephone by Facebook and/or any of it members via its Facebook Mobile service, such messages were unauthorized, and a violation of the rights of plaintiff.

44.  **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff is familiar with the basic facts that form the bases of the proposed class members' claims.  Plaintiff's interests do not conflict with the interests of the other class members that she seeks to represent.  Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously.  Plaintiff's counsel has successfully prosecuted complex actions including consumer protection class actions.  Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the class members.

45.  **Superiority**:  The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the proposed class members.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
10

The relief sought per individual member of the class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of defendants. Furthermore, it would be virtually impossible for the class members to seek redress on an individual basis. Even if the class members themselves could afford such individual litigation, the court system could not.

46.     Individual litigation of the legal and factual issues raised by the conduct of defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.

47.     Given the similar nature of the class members' claims and the absence of material differences in the state statutes and common laws upon which the class members' claims are based, a nationwide class will be easily managed by the Court and the parties.

48.     The court may be requested to also incorporate subclasses of Plaintiffs, defendants, or both, in the interest of justice and judicial economy.

49.     In the alternative, the class may be certified because:

    a.  the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct by defendant;

    b.  the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c.  defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

# FIRST CAUSE OF ACTION

## (California Computer Crime Law

### Cal. Pen. Code § 502)

50.    Abrams incorporates by reference the foregoing allegations.

51.    The cellular phones used and owned by Abrams and the other class members are sophisticated electronic devices which are programmable and capable of being used in conjunction with external files, and contain many (if not most) of the same capabilities and equipment as traditional desktop computers (as well as cellular radio signal processing technology). These cellular phones are computer systems under the definition of Cal. Pen. Code § 502(b)(5).

52.    The delivery of SMS messages to cellular phones is performed according to industry standards (specifically, the Short Message Service standard). The technical protocols of these standards requires that transmission of mobile content to a cellular phone (and the subsequent billing of that account) is not complete until the cellular phone transmits a confirmation signal. Thus, the unauthorized charges to recycled phone numbers attributable to Facebook Mobile require interactivity and access to the cellular phones of Plaintiff and the other class members. SMS messages contain brief communications from other SMS users, and are data under the definition of Cal. Pen. Code § 502(b)(6).

53.    The receipt of SMS messages to cellular phones consumes computer services as defined by Cal. Pen. Code § 502(b)(4), including computer time, data processing, and storage capacity. Moreover, Abrams and the other class members frequently must pay for the receipt of SMS messages, whether those messages are authorized or not. If the unauthorized charges to recycled phone numbers attributable to Facebook Mobile are not eventually paid, Verizon Wireless (and any other cellular carrier) would discontinue all services (including cellular service) to the affected cellular accounts.

1   54.    Through the conduct alleged above, Defendant is involved in the transmission

2   of SMS messages to the cellular phones of Plaintiff and the other class members. Through

3   this conduct, Defendant violates Cal. Pen. Code § 502(c)(3) by knowingly and without

4   permission using or causing to be used computer services and violates Cal. Pen. Code §

5   502(c)(4) by knowingly accessing the cellular phones of Plaintiff and the class members and

6   without permission adds data to those phones.

7   55.    Plaintiff and the other class members own the cellular phones affected by

8   Defendant's violation of Cal. Pen. Code § 502 and are damaged by those violations. If the

9   unauthorized charges to recycled phone numbers attributable to Facebook Mobile are not

10  eventually paid, cellular carriers will discontinue all services (including cellular service) to

11  the affected cellular telephone accounts. Thus, these charges require class members to pay

12  more to their cellular carrier to maintain their cellular service.

13  56.    Plaintiff, on her own behalf and behalf of the other class members, seeks

14  compensatory damages in an amount to be determined at trial and injunctive relief or other

15  equitable relief (including an accounting, and disgorgement of fees obtained while these

16  violations were ongoing), as well as reasonable attorney's fees, against Defendant under Cal.

17  Pen. Code § 502(e).

18              **SECOND CAUSE OF ACTION**

19     **(Violation of California's Unfair Competition Law ("UCL"),**

20              **Cal. Bus. & Prof. Code § 17200)**

21  57.    Abrams incorporates by reference the foregoing allegations.

22  58.    Defendant's communications to the cellular carriers falsely state that Plaintiff

23  and the other class members have approved, authorized, and/or consented to charges for

24  mobile content services, and are deceptive and unfair.

25  59.    Further, these communications are unlawful because they violate Cal. Pen.

26  Code § 502(c)(3) and (4).

27

28

1      60.    Further, these communications are unlawful because they violate the

2    Electronic Funds Transfer Act with respect to pre-paid cellular accounts. Pre-paid cellular

3    accounts are credits against future charges through a cellular carrier, are established primarily

4    for personal, family, or household purposes. 12 C.F.R. § 205.2(b)(1). Cellular carriers which

5    offer pre-paid accounts are "financial institutions" under the EFTA, because they directly or

6    indirectly hold an account belonging to the class members. 12 C.F.R. § 205.2(i). The SMS

7    messages sent through Facebook Mobile are initiated when Facebook users post messages on

8    the Facebook website and are initiated by computer; when the SMS messages are sent, funds

9    corresponding to the charges for these SMS messages are transferred from the pre-paid

10   cellular accounts. The transfer of these funds is an electronic fund transfer under the

11   definition in 12 C.F.R. § 205.3(b). As the electronic fund transfers are set to occur whenever

12   Facebook users post messages, they were purportedly authorized to recur at substantially

13   regular intervals, and are preauthorized electronic fund transfers under the definition in 12

14   C.F.R. § 205.2(k). Facebook violates 15 U.S.C. § 1693e(a) and 12 C.F.R. § 205.2(b) when it

15   initiates the transfer of funds through Facebook Mobile without the written authorization of

16   Plaintiff and the other class members.

17     61.    The acts alleged above are unlawful, unfair or fraudulent business acts or

18   practices and constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

19     62.    These UCL violations have damaged the Plaintiff and other class members by

20   causing them to pay falsely inflated cellular service bills to their cellular carriers, as well as

21   the lost time required to sort, read, discard and attempt to prevent future charges for

22   unwanted mobile content services, and lost storage space, connectivity, and computing

23   resources on the cellular phones.

24     63.    Plaintiff, on her own behalf and behalf of the other class members, seeks an

25   order enjoining Defendant's unfair competition alleged herein, and restitution of property

1     gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well

2     as interest and attorney's fees and costs pursuant to, in part, Cal. Code Civ. Proc. § 1021.5.

3

4                      **THIRD CAUSE OF ACTION**

5                        **(Unjust Enrichment)**

6        64.     Plaintiff incorporates by reference the foregoing allegations.

7        65.     A benefit has been conferred upon Defendant by Plaintiff and the Class. On

8     information and belief, Defendant, directly or indirectly, has received and retains money

9     belonging to Plaintiff and the Class resulting from its causing them to be billed for

10    unauthorized content charges, and in particular, its practice of systematically, repeatedly and

11    without authorization, causing Plaintiff and the Class of wireless handset owners to be billed

12    by Defendant's wireless carriers partners for mobile content services authorized to be

13    purchased by the previous subscriber assigned such telephone numbers.

14        66.     Defendant appreciates or has knowledge of said benefit.

15        67.     Under principles of equity and good conscience, Defendant should not be

16    permitted to retain the money belonging to Plaintiff and the Class which Defendant has

17    unjustly received as a result of its actions.

18                     **FOURTH CAUSE OF ACTION**

19                      **(Trespass to Chattels)**

20        68.     Plaintiff incorporates by reference the foregoing allegations.

21        69.     At all relevant times, Defendant and/or their agents intentionally and without

22    consent, gained access to Plaintiff's wireless handset and the handsets of the class, used

23    Plaintiff's wireless handset and the handsets of the class, occupied memory of these handsets,

24    and/or dispossessed Plaintiff and the members of class of unencumbered access to their

25    wireless handsets.

26

27

28

70.   In so doing, Defendant intentionally intermeddled with, damaged, and deprived Plaintiff and the class of their wireless handsets, or a portion thereof.

WHEREFORE, Plaintiff Lindsey Abrams, on behalf of herself and the Class, prays for the following relief:

1.     An order certifying the Class as defined above:

2.     An injunction requiring Defendant to cease all unauthorized wireless activities and restraining Defendant from altering, erasing, changing, deleting, destroying or otherwise removing or disposing of any documents, records, databases, computer systems and the like currently in its possession or control or in the possession or control of its agents and contractors which are used or useful in identifying all persons, corporations or other entities to whom Defendant has transmitted its text messages;

3.     An award of actual and/or statutory damages;

4.     Reasonable attorney's fees and costs; and

5.     Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  October 22, 2007

By: _____
Alan Himmelfarb
KAMBEREDELSON, LLC
One of the Attorneys for Lindsey
Abrams, individually and on behalf of a
class of similarly situated individuals

ALAN HIMMELFARB (State Bar # 90480)
KAMBEREDELSON, LLC
2757 Leonis Blvd
Vernon, California 90058-2304
Telephone: (323) 585-8696

JAY EDELSON (pro hac vice pending)

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
16

1  MYLES MCGUIRE (pro hac vice pending)
   ETHAN PRESTON (pro hac vice pending)
2  KAMBEREDELSON, LLC
   53 West Jackson Boulevard
3  Suite 1530
   Chicago, Illinois 60604
4  Telephone: (312) 589-6370
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
17