**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL CRISSWELL, individually and on behalf of a class of similarly situated individuals, | No. 08 CV 01578 |
| Plaintiff, | |
| v. | Judge Milton I. Shadur |
| MYSPACE, INC., a Delaware corporation, | |
| Defendant. | Magistrate Judge Sidney I. Schenkier |

## PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Plaintiff Michael Crisswell ("Plaintiff") respectfully seeks an order from the Court permitting discovery to be held prior to a Rule 26(f) conference, pursuant to Rule 26(d)(1). In support of this motion, Plaintiff states as follows:

1.     Plaintiff will file a contemporaneously filed Motion for Preliminary Injunction as described in his accompanying brief. In particular, Plaintiff seeks a Motion to prevent and deter Defendant MySpace, Inc. ("MySpace") from continuing to transmit, cause wireless customers to be billed for, and retaining money from charges for unauthorized mobile content.

2.     Defendant has harmed Plaintiff in several ways: by (1) causing charges for unauthorized text messages to be placed on his cellular telephone bill; (2) retaining at least a portion of the money he paid for such unauthorized charges; (3) intentionally or without consent, gaining access to his wireless device, occupying memory on the device, thereby encumbering the use of the device; and (4) invading the privacy of his wireless device. As more fully described in his accompanying brief, damages may remedy Plaintiff's injuries stemming from his payments for Defendant's unauthorized mobile content, but cannot adequately remedy the injury to his interest in being free from the threat of continued transmission of and billing for such content. Plaintiff needs injunctive relief to protect that interest – the more time that elapses before that relief is granted, the greater the injury will be.

3.     Plaintiff will be unduly impaired in bringing this Motion for Preliminary

Injunction without discovery to gather sufficient evidence in support thereof. Rule 26(d) prohibits discovery prior to a Rule 26(f) conference, absent stipulation by the parties or this Court's order. Defendant has declined to engage in any discovery discussions. Therefore, Plaintiff needs the Court to intercede and enter an order granting expedited discovery under Rule 26(d)(1). Plaintiff seeks only discovery reasonably necessary to sustain his Motion for Preliminary Injunction. Plaintiff requires discovery from certain non-party partners and agents to present evidence of irreparable harm to his interest and that will be directly limited to 1) supporting his Motion, and 2) rebutting evidence the Defendant may advance in its Opposition to Plaintiff's instant Motion.

4.    Courts interpreting Rule 26(d)(1) orders for expedited discovery have gravitated towards a "good cause" standard. Plaintiff's contemporaneously filed Motion for Preliminary Injunction seeks to mitigate irreparable harm, and limits the expedited discovery to evidence necessary to sustain that motion. Defendant has declined to allow expedited discovery. Therefore, there is good cause for the relief sought in this Motion.

5.    At the very least, the Court should grant Plaintiff leave to serve subpoenas on certain non-parties to preserve documents related to this litigation. While MySpace, as a party, has an obligation to preserve documents relevant to this litigation, non-parties do not. Plaintiff anticipates many, if not most, of the documents relevant to his injunctive relief lay in the hands of Defendant's non-party business partners and agents. Plaintiff must have an order from the Court even to serve a preservation subpoena on these firms, to ensure that evidence relevant to his case will not be destroyed.

WHEREFORE, Plaintiff Michael Crisswell respectfully requests that the Court enter an order pursuant to Rule 26(d)(1) permitting the parties in this action to commence discovery, limited to:

a.    Subpoenas to Sprint-Nextel Corporation of Kansas; Cellco General Partnership d/b/a Verizon Wireless and Virgin Mobile USA, Inc. of New Jersey; AT&T Mobility, LLC of Georgia; T-Mobile USA, Inc. of Washington; VeriSign, Inc. and mBlox, Inc. of California, for documents and testimony relating to the segment of their businesses which involves MySpace;

b.    Discovery related to: (i) MySpace's procedure for validating wireless telephone

numbers to which it and its partners and agents are sending text messages; (ii) measures MySpace and its partners and agents have taken to prevent the sending of unauthorized MySpace text messages; and (iii) income received by MySpace and its partners and agents in connection with unauthorized MySpace text messages; and

c.    Any discovery reasonably calculated to rebut evidence advanced in Defendant's Opposition to Plaintiff's Motion.

Respectfully submitted,

Dated: June 11, 2008

By: /s/ Myles McGuire
Jay Edelson
Myles McGuire
Ethan Preston
KAMBEREDELSON LLC
53 West Jackson Blvd., Suite 550
Chicago, IL 60604
(312) 589-6370
jedelson@kamberedelson.com
mmcguire@kamberedelson.com
epreston@kamberedelson.com

## CERTIFICATE OF SERVICE

Pursuant to LR 5.5, I hereby certify that I served the foregoing Notice of Motion, Motion, and attached supporting Memorandum through this Court's ECF system, consistent with Section IX of General Order 07-0023, on the following date.

Dated: June 11, 2008

By: /s/ Myles McGuire
Myles McGuire
KAMBEREDELSON LLC
53 West Jackson Ave., Suite 550
Chicago, IL 60604
(312) 589-6370
mmcguire@kamberedelson.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL CRISSWELL, individually and on behalf of a class of similarly situated individuals,<br><br>                Plaintiff,<br><br>    v.<br><br>MYSPACE, INC., a Delaware corporation,<br><br>                Defendant. | No. 08 CV 01578<br><br>Judge Milton I. Shadur<br><br>Magistrate Judge Sidney I. Schenkier |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR EXPEDITED DISCOVERY

Through the attached Motion, Plaintiff Michael Crisswell ("Crisswell") asks the Court to permit expedited discovery pursuant to Rule 26(d)(1), so that he can gather admissible evidence to support a Motion for Preliminary Injunction ("Motion").

Crisswell alleges in his Complaint that Defendant MySpace, Inc. ("MySpace") has transmitted unauthorized text messages to the wireless devices of consumers nationwide. (Pl.'s Compl. ¶¶ 1-4, 17.) In addition, Plaintiff's Complaint alleges, *inter alia*, that MySpace has caused consumers to be charged for such unauthorized text messages, received and retained money from such charges, encumbered consumers' use of their wireless devices, and failed to implement necessary safeguards to prevent such conduct. (Pl.'s Compl. ¶¶ 14-18, 38, 42, 58.)

## I.      Relief for the Putative Class's Claims is Incomplete Without an Injunction

Damages may remedy the Putative Class's injuries stemming from payment for the unauthorized text messages Defendants transmitted, but cannot remedy the injury to their interest in being free from the threat of continued transmission of and billing for such text messages. Moreover, damages are not an adequate remedy for the noneconomic injuries that Defendant's continuing trespass to Plaintiff's property. Crisswell needs injunctive relief to have a complete and effective remedy to his injury – and the more time that lapses before that relief is granted, the greater the risk of continued injury becomes.

Plaintiff has contemporaneously filed a Motion for Preliminary Injunction to stop

MySpace from repeatedly transmitting unauthorized text messages to himself and a class of wireless subscribers nationwide ("Class"), as well as to prevent MySpace from continuing to cause charges for such messages to be placed on the cellular telephone bills of Crisswell and/or the Class. Crisswell needs an injunction to protect his interests and the Class's interests.

## II.    Crisswell's Motion for Preliminary Injunction Will Be Impaired Without Discovery

The discovery sought in this Motion is specifically tailored to support the Motion for Preliminary Injunction. (McGuire Decl. ¶ 9.) While Plaintiff believes that his Motion for Preliminary Injunction is sufficiently supported and that his Motion should prevail, the discovery Plaintiff seeks will provide Plaintiff a much more fair opportunity to litigate his Motion. Much of the relevant evidence supporting his Motion lies exclusively in the hands of Defendant and its commercial partners and is not available to Crisswell absent discovery. Without discovery, then, Crisswell opportunity to effectively litigate his Motion for Preliminary Injunction is unduly curtailed. Further, Plaintiff should have the right to take discovery to rebut any contrary evidence that Defendant may present.

## III.   Crisswell Requires a Court Order to Commence Discovery for his Motion for Preliminary Injunction

Under Rule 26(d)(1), Crisswell's sole avenue for promptly commencing discovery is an order by the Court. "Rule 26(d) bars discovery, absent stipulation or court order, before [the Rule 26(f) conference.]" Manual for Complex Litigation (Fourth) § 11.421 (2004). *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)"). Despite Plaintiff's solicitations, Defendant has declined to stipulate to commencing discovery.[1]

On May 30, 2008 the parties appeared before the Court for a status hearing. The hearing began before attorneys for Plaintiff arrived. Though Plaintiff's counsel was late in attending the hearing, Defense counsel failed to inform the Court that Plaintiff's Counsel had

---

[1]    Counsel held a conference by phone on June 10, 2008. During the conference, Plaintiff's counsel sought to discuss the potential to engage in limited discovery. (McGuire Decl. ¶ 6.) Defendant's counsel refused to stipulate to the initiation of any discovery. (McGuire Decl. ¶ 7.)

not yet arrived. (McGuire Decl. ¶ 4.) Though Counsel is unaware of what was discussed at the hearing before his arrival, the parties had agreed to stay discovery pending the Court's order on Plaintiff's Motion to Remand. MySpace's attorneys have represented that the Court further ordered discovery stayed until June 25, 2008. (McGuire Decl. ¶ 6.) Plaintiff's Counsel is unaware of such an order and does not recollect an agreement between counsel to such effect. The Minute Entry following the hearing is similarly silent as to any such order or agreement. (McGuire Decl. ¶ 5.) On June 11, 2008, counsel for both parties called the Clerk of the Court to verify whether the Court had in fact ordered discovery stayed at the May 30, 2008 status hearing. The Clerk informed counsel for both parties that the Court reviewed the transcript and determined that it had not ordered discovery stayed. (McGuire Decl. ¶ 6.)

In any event, Plaintiff is not seeking to broadly open discovery, but rather seeks only the discovery necessary to support his Motion for Preliminary Injunction. (McGuire Decl. ¶ 9.) Regardless of the existence of an agreement to stay discovery, Plaintiff is entitled to seek expedited discovery to support his Motion. Unable to agree with Defendant and having run out of options, Crisswell must turn to the Court

## A.   "Good Cause" Standard Controls Resolution of this Motion

Expedited discovery under Rule 26(d)(1) is controlled by a "good cause" standard. Rule 26(d) has not been thoroughly explored by the courts, and cases interpreting Rule 26(d)(1) were, "until recently[,] scant." *Entm't Tech. Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440, at *2 (E.D. Pa. Oct. 2, 2003).[2] However, there is a consensus that "it is implicit that some showing of good cause should be made to justify" orders permitting discovery under Rule 26(d)(1). 8 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2046.1 (2d ed. 2008) (quoted by *Sheridan v. Oak Street Mortg., LLC*, 244 F.R.D. 520, 521-22 (E.D. Wis. 2007)). *Cf.* Fed. R. Civ. P. 26 advisory committee note on 1993 amendments ("Discovery can begin earlier [than the Rule 26(f) conference] by . . . [court]

---

[2]   Other courts have commented on the dearth of authority interpreting Rule 26(d)(1). *Renaud v. Gillick*, No. 06-1304, 2007 WL 98465, at *2 (W.D. Wash. Jan. 8, 2007); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613 (D. Ariz. 2001); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, No. 98-2782, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998).

order . . . This will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction").

There are competing standards applicable to Rule 26(d) motions. *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), an early influential case, borrowed the test for granting a preliminary injunction and applied it to requests for expedited discovery. Conversely, *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612 (D. Ariz. 2001) and *Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, No. 98-2782, 1998 WL 404820 (E.D. Pa. July 15, 1998), declined to follow *Notaro* and adopted a more flexible "good cause" standard. *Id.* at 613-14. This Court and its sister courts in Wisconsin and Indiana have adopted the latter standard. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) (adopting standard in *Philadelphia Newspapers* over *Notaro*); *Borom v. Town of Merriville*, No. 2:07 CV 98, 2007 WL 1797639, at *7 (N.D. Ind. 2007) (citing to Wright & Miller as authority for standard applicable to Rule 26(d)). "The 'good cause' standard suggested by Federal Practice and Procedure and adopted by other district courts is a workable and practical standard and the circumstances of this case do not warrant the more stringent test of *Notaro*." *Sheridan*, 244 F.R.D. at 522. This result is consistent with the majority of later authorities in other Circuits.[3]

It is doubtful whether *Notaro* has any continued vitality, given that the court which issued *Notaro* has since found that these "latter cases seem to have the better of the argument," and has rejected the *Notaro* standard in favor of "the flexible standard of reasonableness and good cause." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326, 327 (S.D.N.Y. 2005). This Court has specifically limited *Notaro*'s application to its specific facts. *Merrill Lynch*, 194 F.R.D. at 624 (where "plaintiffs sought expedited discovery in lieu of a preliminary injunction

---

[3]  *See, e.g.*, *OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 302-05 (N.D.N.Y. 2006); *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005); *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo 2003); *Entm't Tech. Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440, at *2-4 (E.D. Pa. Oct. 2, 2003); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 274-76 (N.D. Cal. 2002); *Whitfield v. Hochsheid*, No. 02-218, 2002 WL 1560267 (S.D. Ohio July 2, 2002); *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002).

hearing[,] . . . it may well have made sense to utilize the preliminary injunction factors to consider whether expedited discovery was appropriate"). This is particularly true as Federal Rule 26 has changed significantly since *Notaro* was decided.[4]

> The driving concern of the *Notaro* court was undermining the Rule 30(a) provision which protects defendants from unwarily incriminating themselves before they have a chance to review the facts of the case and retain counsel. . . . [Under the existing Rule 26(d)(1)], the bar on discovery extends until the Rule 26(f) conference which often takes place three or four months into the litigation – after the defendant has retained counsel and responded to the complaint. The timing of discovery prescribed by Rule 26(d) focuses not on protecting the unwary and unrepresented defendant, but rather on orderly case management.

*Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) (citation, quotation omitted). *Notaro*'s analysis would not "accommodate expedited discovery in circumstances even where such discovery would facilitate case management and expedite the case with little or no burden to the defendant simply because the plaintiff would not suffer 'irreparable injury.'" *Id.*, at 276.

Application of the *Notaro* standard here would be particularly inapt because Crisswell seeks expedited discovery to "gather evidence for [his] preliminary injunction hearing." *Philadelphia Newspapers*, 1998 WL 404820, at *2. "[E]mploying a preliminary-injunction type analysis to determine entitlement to expedited discovery makes little sense, especially when applied to a request to expedite discovery in order to prepare for a preliminary injunction hearing." *Ayyash*, 233 F.R.D. at 326-27 (citing and following *Merrill Lynch*, 194 F.R.D. at 624). Denial of expedited discovery for a motion for preliminary injunction could potentially "unfairly prejudice [Crisswell] since [he] will not have an early opportunity to develop evidence for use in support of such a motion." *OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006).

### B.   There Is Good Cause for Expedited Discovery, and Plaintiff's Proposed Expedited Discovery is Otherwise Reasonable

---

[4] Other courts that have commented on the changes to Rule 26 since *Notaro* include *OMG Fidelity*, 239 F.R.D. at 303 n.4, & 304 (discussing differences between current Rule 26 and pre-2000 discovery scheme under which *Notaro* was decided; "[w]hatever vitality Notaro may retain in the wake of the 2000 amendments, its reasoning does not apply in this case") and *Yokohama*, 202 F.R.D. at 613 (*Notaro* was "decided substantially before the 1993 amendment of today's version of Rule 26(d)").

Crisswell prevails under the applicable "good cause" standard. "Good cause" consists of "examin[ation of] the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." *Merrill Lynch*, 194 F.R.D. at 624 (cited and followed by *Sheridan*, 244 F.R.D. at 522, quoted by *Ayyash*, 233 F.R.D. at 327; *Entm't Tech.*, 2003 WL 22519440, at *4). Other courts have focused on the comparative burdens on the parties. "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. *See also Vance v. Rumsfeld*, No. 06-6964, 2007 WL 4557812, at *5-6 (N.D. Ill. Dec. 21, 2007) (determination of motion for expedited discovery turns on 1) necessity and 2) harm to plaintiffs from not expediting outweighing the prejudice to the responding party if discovery is expedited); *OMG Fidelity*, 239 F.R.D. at 305 (comparing "the potential prejudice which will be suffered by the defendant if discovery is permitted, and that which will be experienced by the plaintiff if denied the opportunity for discovery at this stage"). In particular, *OMG Fidelity* analyzed a motion for expedited discovery while a motion to dismiss was pending using decisions concerning motions for protective orders under Rule 26(c) in a similar procedural posture. *See id.* at 304-05 (considering "the burden of responding to the contemplated discovery, and the strength of the dispositive motion forming the basis for the stay request").[5] Taking all the considerations into account, it is plain that denying expedited discovery would harm Criswell's interests much more than Defendants' interests would be harmed if expedited discovery was granted.

### 1.   Crisswell Will Be Prejudiced Without Expedited Discovery

The considerations weighed in a motion for expedited discovery include "how far in advance of the start of formal discovery was the motion made, how narrowly tailored are the discovery requests, what is the purpose of the plaintiff in requesting early discovery, do the requests burden the defendants, and whether the defendants are able to respond to the requests

---

[5]   Although the two tests may be interrelated, the "good cause" test for protective orders under Rule 26(c) is "distinctly different" than that for expedited discovery under Rule 26(d)(1). *OMG Fidelity*, 239 F.R.D. at 304-305. *See Entm't Tech.*, 2003 WL 22519440, *3 n.2 (these two standards "should not be confused").

in an expedited manner." *Entm't Tech.*, 2003 WL 22519440, at *3. These factors favor the instant Motion.

Most significantly, Crisswell seeks expedited discovery to support a motion for preliminary injunction. *OMG Fidelity*, 239 F.R.D. at 305 (placing particular emphasis on contemplated motion for preliminary injunction and potential for unfair prejudice to plaintiff without discovery); *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo 2003) (party seeking motion for preliminary injunction is factor favoring expedited discovery). *See also Sheridan*, 244 F.R.D. at 522 (allowing discovery where, "absent limited discovery" from defaulted defendant on class certification and damages, plaintiff could not "pursue his claims"). As established above, injunctive relief is a central and indispensable element of Crisswell's claims. Additionally, much of the evidence on which Crisswell may rely for his Motion for Preliminary Injunction lies in the hands of third parties – certain non-party partners and agents of Defendant who possess relevant billing and transmission records. Unlike Defendants, those third parties do not have any inherent duty to preserve this evidence. Expedited discovery is appropriate because "evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation." *Qwest*, 213 F.R.D. at 419.

Lastly, Plaintiff's request for discovery is well-timed. The request comes after Defendant is ably represented (obviating the concerns at issue in *Notaro*). *See Semitool*, 208 F.R.D. at 275-76. Conversely, the request is early enough that it could convey a substantial benefit to Crisswell. *Cf. id.* at 277-78 (court did not allow expedited third party discovery where it would advance discovery only three weeks).

## 2. Expedited Discovery Will Not Prejudice Defendants

Expedited discovery will impose minimal burdens on Defendants. Crisswell seeks only a narrow set of discovery that imposes a minimal burden on MySpace and certain third parties. *OMG Fidelity*, 239 F.R.D. at 305 (allowing expedited discovery, in part because it was "exceedingly pointed" and "burden of responding to them would not be particularly onerous"); *A.G. Edwards & Sons, Inc. v. Marcolla*, No. 07-3260, 2007 WL 3032769, at *3 (C.D. Ill.

2007) (expedited discovery limited to plaintiff's motion for preliminary injunction may be ordered); *Entm't Tech.*, 2003 WL 22519440, at *3 ("[i]f narrowly tailored to fit the needs of the hearing, leave to conduct expedited discovery [will] be granted"). Crisswell only needs discovery sufficient to gather evidence narrowly tailored to support his Motion for Preliminary Injunction. As demonstrated above, this narrowly tailored discovery involves only a few, discrete areas of inquiry.

Defendant has indicated that it intends to file a motion to dismiss. Again, *OMG Fidelity* relied on authorities on the reverse side of the coin – decisions concerning motions to stay discovery, rather than expediting it – to decide the equities of a motion to expedite discovery. *OMG Fidelity*, 239 F.R.D. at 304-5. These authorities also provide guidance here: Defendant suffers no prejudice from expedited discovery where it could not obtain a motion to stay discovery pending its motion to dismiss.

At the outset, "

there is no requirement that the discovery cease during the pendency of a motion to dismiss . . ." *SK Hand Tool Corp. v. Dresser Indus., Inc.*

, 852 F.2d 936, 945

(7th Cir. 1988).

"[T]he mere filing of such a motion does not automatically stay discovery, nor does it mean that a court will automatically grant a stay simply because the defendant asks for one." *Syngenta Seeds, Inc. v. BTA Branded, Inc.*, No. 05-6673, 2007 WL 3256848, at *1 (N.D. Ill. Nov. 1, 2007). Rather, a defendant which seeks to stay discovery pending its motion to dismiss "bears the burden of demonstrating good cause and must show a particular need for protection." *Nowaczyk v. Matingas*, 146 F.R.D. 169, 176 (N.D. Ill. 1993). *Cf. Syngenta Seeds*, 2007 WL 3256848, at *2 (denying stay of discovery pending motion to dismiss); *Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 437 (N.D. Ill. 1996) (same; "a motion to stay discovery will not be granted every time a potentially dispositive issue is placed before the court"). Moreover, "[c]ourts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good

cause." *Hodgdon v. Northwestern University*, 245 F.R.D. 337, 341 (N.D. Ill. 2007).

Defendants cannot demonstrate potential prejudice from expedited discovery simply by asserting that they may file a motion to dismiss in the future. *OMG Fidelity*, 239 F.R.D. at 304 ("[t]he mere filing of a dismissal motion, without more, does not guaranty entitlement to . . . a stay [of discovery]"). Analogous jurisprudence on protective orders supports this conclusion: in *Sygenta Seeds*, the Court found that the defendants did not demostrate "good cause" where their "sole argument" was that if the complaint was dismissed, "the need for discovery would be eliminated." *Syngenta Seeds*, 2007 WL 3256848, at *2. "But this is true any time a dispositive motion is filed. Permitting a stay of discovery simply upon the filing of such a motion would allow the exception to swallow the rule." *Id.* Plainly, Rule 12(b)(6) *simply does not provide for staying discovery* until a motion to dismiss is resolved.[6] Indeed, when Congress sought to automatically stay discovery pending a motion to dismiss under the Private Securities Litigation Reform Act, it found it necessary to explicitly provide for such stays in the statute. *Cf.* Private Securities Litigation Reform Act of 1995, § 102, Pub. L. No. 104-67 (codified as amended in, *inter alia*, 15 U.S.C. § 77z–1(b); 15 U.S.C. § 78u–4(b)(3)) ("PSLRA"); H.R. Rep. No. 104-369, at 37 (1995) (describing rationales for PSLRA's discovery limitations particularized to securities lawsuits).[7] Certainly, there are many cases

---

[6] Indeed, it appears courts from a plurality of Circuits have adopted this reasoning. The intention of a party to move for judgment on the pleadings is not ordinarily sufficient to justify a stay of discovery. . . . Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation. . . . Since motions to dismiss are a frequent part of federal practice, this provision only makes sense if discovery is not to be stayed pending resolution of such motions.
*Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (citations omitted, quoted by *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600-1 (C.D. Cal. 1995)). "A court should not automatically stay discovery pending a motion to dismiss under Rule 12(b). Had the drafters of the Federal Rules of Civil Procedure wanted an automatic stay of discovery pending a motion to dismiss they could have so provided." *Coca-Cola Bottling Co. of Lehigh Valley v. Grol*, No. 92-7061, 1993 WL 13139559, *2 (E.D. Pa. Mar. 8, 1993) (citing *Gray*, 133 F.R.D. at 40). *See also Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 201-03 (D. Md. 2006).

[7] Although the two tests may be interrelated, the "good cause" test for protective orders under Rule 26(c) is "distinctly different" than that for expedited discovery under Rule 26(d)(1). *OMG Fidelity*, 239 F.R.D. at 304-305. *See Entm't Tech.*, 2003 WL 22519440, *3 n.2 (these two standards "should not be confused").

staying discovery pending a dispositive motion. However, even in these cases, "the existence of a dispositive motion [tends] not [to be] the sole reason for the stay." *Syngenta Seeds*, 2007 WL 3256848, *1.

One of the most significant considerations to a motion to stay is whether the motion to dismiss at issue is "a challenge as a 'matter of law' [rather than a challenge to] the 'sufficiency' of the allegations." *Hachette Distribution, Inc. v. Hudson County News Co., Inc.*, 136 F.R.D. 356, 358 (E.D.N.Y 1991) (quoted by, e.g., *Skellerup Industries*, 163 F.R.D. at 600-01; *United States v. A.T. Massey Coal Co.*, No. 07-299, 2007 WL 3051449, *2 (S.D. W.Va. Oct. 18, 2007); *Coca-Cola*, 1993 WL 13139559, *2). Where a motion to dismiss attacks the adequacy of the allegations, the complaint can be cured through amendment and discovery will likely take place eventually. Hence, a party seeking to stay discovery pending a non-dispositive motion to dismiss is not likely to be prejudiced if the motion is denied. *See A.T. Massey*, 2007 WL 3051449, *3 (denying stay where any "existing pleading defects would be subject to correction"); *Coca-Cola*, 1993 WL 13139559, *2 (denying stay where "motion merely addresses the sufficiency of the complaint" because "pleadings may be amended to correct the deficiencies").

This analysis also applies to a motion for expedited discovery. *OMG Fidelity*, 239 F.R.D. at 305 (where planned motion to dismiss would likely not be entirely dispositive, prejudice asserted by defendant "less of a factor of concern . . . since the discovery sought will in all likelihood occur eventually"). Plaintiff anticipates MySpace will challenge the sufficiency of the Complaint's allegations, so the potential prejudice to Myspace from expedited discovery is minimal.

## IV.   In the Alternative, the Court Should Allow Crisswell to Serve Preservation Subpoenas

The Court should grant Crisswell leave to serve preservation subpoenas on the non-party firms identified in the Motion. Document preservation subpoenas are an artifact typically restricted to cases under the PSLRA. Courts often grant parties leave to serve preservation subpoenas (which have the limited purpose of putting the non-party on notice of the action and

imposing a duty to preserve relevant evidence) during the initial discovery stay under 15
U.S.C. § 77z–1(b) or15 U.S.C. § 78u–4(b)(3). *See, e.g., In re Refco, Inc.*, No. 05-8626, 2006
WL 2337212, at *5 (S.D.N.Y. Aug. 8, 2006) (courts "have generally" permitted PSLRA
plaintiffs to serve document preservation subpoenas on third parties and permitting plaintiffs
"to serve subpoenas requiring third parties to preserve relevant information"); *Gervis v. Berg*,
No. 00-3362, 2005 WL 3299436, at *2-3 (E.D.N.Y. Oct. 25, 2005); *In re Nat'l Century Fin.
Enters., Inc. Fin. Inv. Litig.*, 347 F. Supp. 2d 538, 539-42 (S.D. Ohio 2004); *In re Tyco Int'l,
Ltd., Sec. Litig.*, No. 00-1335, 2000 WL 33654141, at *1, 3-4 (D.N.H. July 27, 2000); *In re
Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997).

 Crisswell's request to at least issue preservation subpoenas should be granted because
the discovery is necessary and particularized to support his planned Motion for Preliminary
Injunction. Leave to issue preservation subpoenas are granted during the initial stay under the
PSLRA where they are 1) necessary and 2) particularized. *See In re Tyco*, 2000 US Dist. WL
33654141, at * 3-4 (interpreting 15 U.S.C. § 78u-4(b)(3)(B)). As the PSLRA's discovery
restrictions do not apply to this antitrust case, leave to serve preservation subpoenas should be
at least as readily available as in a PSLRA case. Even under the heightened standard applicable
to PSLRA cases, however, it is clear that Crisswell has grounds to issue preservation
subpoenas.

### A. Crisswell's Preservation Subpoenas are Particularized

 Crisswell's preservation subpoenas are particularized. A preservation subpoena is
sufficiently particularized when it is 1) directed at specific, identified persons and 2) "identifies
specific types of evidence that fall within its scope." *Id*. at *4. Crisswell's preservation
subpoenas are directed at specific third parties. *Cf. In re Fluor Sec. Litig.*, No. 97-734, 1999
WL 817206, at *2-3 (C.D. Cal. Jan. 15, 1999) (proposed preservation subpoena directed at
unidentified third parties would not be sufficiently directed at specific persons for leave to
issue). Moreover, the subpoenas' subject matter is sufficiently particularized where they
specify the documents to be preserved "in terms comparable to the categories used [in]
negotiations regarding documents and data in the possession of defendants," rather than an

"open-ended, boundless universe of materials." *In re Tyco*, 2000 US Dist. WL 33654141, at *4
(citation, quotation marks omitted). Preservation subpoenas related to a particular event, action
or agreement between particular, specified parties are sufficiently particularized. *See Vacold
LLC v. Cerami*, No. 00-4024, 2001 WL 167704, at *6-7 (S.D.N.Y. Feb. 16, 2001).

### B.    Crisswell's Preservation Subpoenas are Necessary

Crisswell's requested preservation subpoenas are necessary to the extent they are
required to preserve evidence when evidence relevant to an action is in the custody of a third
party, and that third party is a corporate entity which may not have actual notice of the action
and which may engage in routine document destruction. *Id.* at *3-4. *See also In re Grand
Casinos*, 988 F. Supp. at 1272 (where non-party was a large corporation and the actions giving
rise to plaintiff's claim began three years prior, the court permitted preservation subpoena,
finding "ordinary document retention policies of some companies might well result in the
destruction of relevant files in the ordinary course of business"). Large, nationally known
corporate concerns like Sprint-Nextel Corporation, Verizon Wireless, Virgin Mobile, AT&T
Mobility, and T-Mobile USA, Inc. can be expected to routinely destroy documents as an
ordinary part of business. *Cf. In re Triton Energy, Ltd., Sec. Litig.*, No. 98-256, 2002 WL
32114464, at *3 (E.D. Tex. Mar. 7, 2002) (where corporation's outside directors were not
advised to preserve documents, relevant e-mails were lost because party's e-mail server
destroyed e-mails after one year). Indeed, even relatively smaller firms like VeriSign and
mBlox are likely to destroy documents after a period of time.

The proposed preservation subpoenas are necessary to protect Crisswell's claims from
undue prejudice. *In re Tyco*, 2000 US Dist. WL 33654141, at * 4. Undue prejudice means
"improper or unfair detriment," and denotes something less than "irreparable harm"; without
the preservation subpoenas, Crisswell's ability to get relief may ultimately be compromised.
*Id.* (citing *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99-342, 1999 UWL
223158 (S.D.N.Y. Apr. 16, 1999); *Medical Imaging Cents. of Am., Inc. v. Lichtenstein*, 917 F.
Supp. 717, 720 (S.D. Cal. 1996)). The preservation subpoenas proposed here meet the undue
prejudice standard where "evidence relevant to plaintiffs' claims might be inadvertently

destroyed by third parties without notice of th[e] action." *Id.* at *4.

## V.   Conclusion

MySpace's transmission of, billing for, and retaining charges for unauthorized text messages threatens harm to Crisswell's interest in being free from such conduct. Where Crisswell seeks discovery narrowly tailored to produce evidence that will support his planned Motion for Preliminary Injunction, he will be more prejudiced by a denial of expedited discovery than Defendant could be prejudiced by improvidently-granted expedited discovery. Crisswell has shown sufficient good cause to grant leave to commence discovery immediately under Rule 26(d)(1). The Court, even if it declines to allow wider discovery at this point, should grant Crisswell leave to serve preservation subpoenas upon the non-parties identified in the Motion. There is a genuine risk that these firms will destroy documents relevant to Crisswell's and other proposed Class members' claims and thereby unduly prejudice his claims.

Respectfully submitted,

Dated: June 11, 2008

By: /s/Ethan Preston
Jay Edelson
Myles McGuire
Ethan Preston
KAMBEREDELSON LLC
53 West Jackson Blvd., Suite 550
Chicago, IL 60604
(312) 589-6370
jedelson@kamberedelson.com
mmcguire@kamberedelson.com
epreston@kamberedelson.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL CRISSWELL, individually and on behalf of a class of similarly situated individuals,<br><br>          Plaintiff,<br><br>     v.<br><br>MYSPACE, INC., a Delaware corporation,<br><br>          Defendant. | No. 08 CV 01578<br><br>Judge Milton I. Shadur<br><br>Magistrate Judge Sidney I. Schenkier |

**DECLARATION OF MYLES MCGUIRE IN SUPPORT OF**
**MOTION FOR EXPEDITED DISCOVERY**

Pursuant to 28 U.S.C. § 1764, I, Myles McGuire, hereby declare and state as follows:

1.  I am an attorney admitted to practice in the State of Illinois and represent the Plaintiffs in the above–titled action. I am entering this declaration in support of the attached Motion for Preliminary Injunction. I am over the age of eighteen and am fully competent to make this declaration. This declaration is based upon my personal knowledge, except where expressly noted otherwise.

2.  I am a partner at KamberEdelson LLC. Since 2005, the attorneys at KamberEdelson LLC and its predecessor firms have been involved in a wide-ranging investigation into the mobile content industry, which includes text message services of the type employed by MySpace.

3.  KamberEdelson LLC has regularly engaged in major complex litigation and has extensive experience in consumer class action litigation, including lawsuits similar to the instant case.

4.  On May 30, 2008 the parties appeared before the Honorable Milton I. Shadur for a status hearing. The hearing began before Plaintiff's Counsel's ("Counsel") arrival. Though Counsel was late in attending the 8:45am scheduled hearing, Defendant's attorneys failed to inform the Court that Plaintiff's Counsel had not yet arrived.

5. Though Counsel is unaware of what was discussed at the hearing before his arrival, the parties had agreed to stay discovery pending the Court's order on Plaintiff's Motion to Remand. MySpace's attorneys have represented the parties further agreed to stay discovery pending Defendant's anticipated Motion to Dismiss. While Plaintiff's Counsel does not specifically recollect such an agreement. The Minute Entry following the hearing, however, is silent as to such agreement.

6. On June 10, 2008 Plaintiff's counsel held a conference by phone with Defense counsel. During the conference, Plaintiff's counsel sought to discuss the potential to engage in limited discovery with respect to Plaintiff's anticipated Motion for Preliminary Injunction. On June 11, 2008, Defense counsel emailed Plaintiff's counsel stating that it was their understanding that the Court had agreed to order discovery stayed until at least June 25, 2008. Shortly thereafter, counsel for both parties called the Clerk of the Court to determine whether the Court had in fact ordered discovery stayed at the May 30, 2008 status hearing. The Clerk informed counsel for both parties that the Court had not ordered discovery stayed.

7. Defense counsel refused to stipulate to conducting any discovery.

8. Given Defense counsel's refusal to stipulate, Plaintiff must seek an order from the Court granting expedited discovery to support his Motion for Preliminary Injunction.

9. The discovery sought in Plaintiff's Motion for Expedited Discovery will be specifically tailored to support his Motion.

10. At the very least, Plaintiff will need to serve subpoenas on certain non-parties to preserve documents related to this litigation.

11. Attached is a true and correct copy of the firm resume of KamberEdelson LLC.

12. I declare under penalty of perjury that the foregoing is true and correct.

Dated this 11th day of June 2008.          \_\_/s/ Myles McGuire_____

                                           Myles McGuire

## KAMBEREDELSON, LLC – FIRM RESUME

In October of 2007, two nationally recognized plaintiffs' class action firms joined to form KamberEdelson, LLC. With lawyers in New York, Los Angeles, Florida, and Chicago, KamberEdelson has a practice that is national in scope.

KamberEdelson focuses its practice on all types of plaintiff's-side class and mass actions, and has eight primary practice areas:

- "New technology" class actions;
- Privacy class actions;
- Securities class actions;
- Mass tort class and mass actions;
- Consumer class actions;
- Insurance class actions;
- Antitrust cases; and
- International arbitrations.

The firm's cases frequently involve important legal issues, and regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including on ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## OUR ATTORNEYS

**SCOTT A. KAMBER** is a founding member of KamberEdelson. Mr. Kamber currently serves as lead or co-lead counsel in numerous major national class actions including In re Pet Food, In re ATI Tech HDCP Litig., Johnson v. Microsoft, In re Network Commerce Securities Litigation, and In re HP Power Plug and Graphic Card Litig. Mr. Kamber has also served in leadership roles in numerous private and class actions including suits on behalf of shareholders, consumers and private corporations in the United States and abroad,, including: In re Song BMG CD Technologies (one of the largest computer virus cases ever resolved), Wormley v. GeoCities (consumer class action for privacy violations that is believed to be the first internet privacy case to recover a benefit for impacted class members); In re Starlink Growers (represented sub-class of farmers who grew Starlink in a consolidated settlement of federal class action valued in excess of $100 million); In re Loch Harris (derivative action that successfully obtained dissolution of corporation and distribution of assets to shareholders); In re Command Systems (securities class action in which participating shareholders recovered over 80% of their losses); and In re WebTV (consumer class action for false advertising).

In addition to these commercial cases, Mr. Kamber has been involved in the efforts of

African torture victims to bring their persecutors to justice under the Alien Tort Claims Act and has achieved significant decisions for his clients before the United States Court of Appeals for the Second Circuit and the Southern District of New York. One such result, Cabiri v. Ghana, 165 F.3d 193 (1999), is a leading Second Circuit case under the Foreign Sovereign Immunities Act.

Mr. Kamber graduated cum laude from University of California, Hastings College of the Law in 1991 where he was Order of the Coif, Articles Editor for Hastings Constitutional Law Quarterly and a member of the Moot Court Board. Mr. Kamber graduated with University and Departmental Honors from The Johns Hopkins University in 1986. Mr. Kamber has extensive courtroom experience and has tried over 15 cases to verdict. Prior to founding Kamber & Associates, LLC, Mr. Kamber represented both plaintiffs and defendants in a wide range of commercial litigation. Mr. Kamber is admitted to practice in the State of New York as well as the United States Supreme Court, the United States Court of Appeals for the Second Circuit and Ninth Circuit, and the United States District Courts for the Southern and Eastern Districts of New York. In addition, Mr. Kamber is well-versed in the procedures and practice of numerous arbitration forums, both domestic and international. Prior to practicing law, Mr. Kamber was a financial consultant.

**JAY EDELSON** is a founding member of KamberEdelson. He has served as lead counsel in over 40 class actions, resulting in hundreds of millions of dollars in relief for his clients. His class action cases have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to internet businesses, and the interpretation of numerous life insurance, health insurance, and other state statutes. In February of 2007, the Chicago Sun Times nicknamed Mr. Edelson the "Spam Slammer" after he secured the first settlement of a suit under the Telephone Consumer Protection Act for the alleged transmission of unsolicited text messages. Mr. Edelson has been involved in a number of high-profile "mass tort" class and mass actions and product recall cases, including ones against Menu Foods for selling contaminated pet food, a class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second hand smoke.

Mr. Edelson is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting. He has also appeared on dozens of television and radio programs to discuss his cases. In April of 2007, Mr. Edelson provided testimony to the Subcommittee on Agriculture Appropriations, Senate Committee on Appropriations, U.S. Senate Hearing on "Pet Food Contamination" in connection with one of the class action cases he is prosecuting. Mr. Edelson consults with the University of Chicago Medical Center and the Pritzker School of Medicine on internet and legal ethics issues. Mr. Edelson is a graduate of Brandeis University and the University of Michigan Law School.

**ALAN HIMELFARB** is a member of KamberEdelson. Mr. Himmelfarb was admitted to the practice of law in California in July, 1979. At that time, at the age of 23, he was the youngest member of the California Bar. Within five years, he became managing attorney of a law firm employing six attorneys and a support staff of ten. He specialized in complex litigation, contracts, high technology, foreign licensing, and foreign technology

transfers, and practiced before both state and federal courts. In 1988, he took a position overseas as a foreign legal consultant in Asia. In this capacity, he acted as chief negotiator for international sales/service/technical transfer agreements, mediated cross-cultural (Asian--Western) business and governmental interests, evaluated international business/marketing strategies for multinational corporations, drafted and negotiated a full range of international transactional agreements for Korean, European and American corporations and businessmen and marketed legal services to Korean domestic market and international community. In 1992, Mr. Himmelfarb returned to Los Angeles in the capacity of a litigator, with an emphasis on plaintiff's work against banks and other financial institutions. He has been engaged in class action litigation since 1994.

**ETHAN PRESTION** is a member of KamberEdelson. Mr. Preston focuses on consumer technology, and concentrates his practice in antitrust/competition issues and information security issues. Mr. Preston has taken substantial leadership roles in numerous class action lawsuits. Mr. Preston is admitted to practice before the Northern District of Illinois, the District of New Mexico, and Illinois state courts. Mr. Preston is an inactive member of the New Mexico state bar. Mr. Preston has authored the following law review articles: Cross-Border Collaboration by Class Counsel in the U.S. and Ontario, 4 Canadian Class Action Rev. 164 (2007), The Global Rise of a Duty to Disclose Information Security Breaches, 22 J. Marshall J. Computer & Info. L. 457 (2004) (with Paul Turner), Computer Security Publications: Information Economics, Shifting Liability and the First Amendment, 24 Whittier L. Rev. 71 (2002) (with John Lofton), and The USA PATRIOT Act: New Adventures in American Extraterritoriality, 10 J. Fin. Crime 104 (2002). Mr. Preston has lectured on copyright issues at the University of Illinois at Chicago, and on comparative law on attorneys' fees and costs for the Center for International Legal Studies. Mr. Preston received his Bachelor of Arts degree with honors from the Plan II honors program at the University of Texas at Austin, and his J.D. with distinction from the Georgetown University Law Center in 2001.

**MYLES MCGUIRE** is a member of KamberEdelson. His practice concentrates, nearly exclusively, on consumer protection law and class actions. Mr. McGuire has taken leadership roles in many nationwide and multi-state class actions. His specific area of emphasis is on "new technology" class actions, including those involving electronic commerce, cellular telephony and wireless media, among others. He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile.

Mr, McGuire graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and the Chicago Bar Association. Prior to working as a plaintiff's attorney, Mr. McGuire spent several years counseling high-tech companies.

**STEVEN W. TEPPLER** is Senior Counsel to KamberEdelson. Mr. Teppler concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues

arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Mr. Teppler has authored over a dozen articles relating to information technology law and routinely presents his work at conferences. Mr. Teppler's recent publications include: Spoliation in the Digital Universe, The SciTech Lawyer, Science and Technology Law Section of the American Bar Association, Fall 2007; Life After Sarbanes-Oxley – The Merger of Information Security and Accountability (co-author), 45 Jurimetrics J. 379 (2005); Digital Signatures Are Not Enough (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton*: A Discussion of the Basics of Digital Evidence Admissibility (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; The Digital Signature Paradox (co-author), IETF Information Workshop (The West Point Workshop) June 2005; Observations on Electronic Service of Process in the South Carolina Court System, efiling Report, June 2005. Mr. Teppler is also a contributing author to an American Bar Association book working titled "Foundations of Digital Evidence" (publication expected March 2008).

Mr. Teppler graduated from the Benjamin N. Cordozo School of Law in 1980 after earning his B.A., summa cum laude, from the City College of New York in 1977. Mr. Teppler is admitted to the bars of New York, the District of Columbia and Florida.

**DANA B. RUBIN** is an associate at KamberEdelson focusing her practice on a wide range of class action issues. She graduated with honors from the University of Maryland, College Park in 1993. She received her J.D. in 1999 from Fordham University School of Law, where she was an Associate Editor on the Intellectual Property, Media & Entertainment Law Journal.

Prior to joining KamberEdelson, Ms. Rubin played a role in numerous private and class actions on behalf of shareholders and consumers. Ms. Rubin has also represented both plaintiffs and defendants in employment litigation and civil rights matters. Ms. Rubin is admitted in the State Courts of New York and the United States District Courts for the Southern and Eastern Districts of New York. She is a member of the New York State Bar Association.

**JENNIFER H. FELDSCHER** is an associate at KamberEdelson. Ms. Feldscher was previously a litigation associate at Lewis, Brisbois Bisgaard & Smith, LLP, where she concentrated her practice on all areas of complex commercial litigation.

Ms. Feldscher is a 2001 graduate of Georgetown University School of Law and a 1998 graduate of Brown University.

**STEVEN LEZELL** is an associate at KamberEdelson. Mr. Lezell has tried a number of bench trials, engaged in extensive motion practice from routine to complex, written appellate briefs, litigated class action matters and arbitrated cases.

Mr. Lezell received his J.D. at Chicago-Kent College of law with High Honors in 2005. Mr. Lezell received his certificate in litigation and alternative dispute resolution and was awarded to Chicago-Kent's Order of the Coif. He served as President of the Student Bar Association and as a Notes and Comments Editor for the Chicago-Kent Law Review. Mr. Lezell also represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004 and was awarded the ABA-ALI Scholarship and Leadership Award, for best representing the combination of leadership and scholarship in his graduating class. Mr. Lezell also received the Lowell H. Jacobson Memorial Scholarship which is awarded each year to one law student in the Seventh Circuit. Mr. Lezell received his B.A. in political science, with Distinction, from the University of Michigan in 2002.

**RYAN D. ANDREWS** is an associate at KamberEdelson, LLC. Prior to joining the firm, Mr. Andrews engaged in all aspects of the prosecution and defense of claims on behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals.

Mr. Andrews received his J.D. with high honors from the Chicago-Kent College of Law in 2005 and was named Order of the Coif. While in law school, Mr. Andrews was Notes & Comments Editor for the Chicago-Kent Law Review, a teaching assistant for both Property Law and Legal Writing courses, externed for the Hon. Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Mr. Andrews graduated from the University of Michigan in 2002 earning his B.A., with distinction, in Political Science and Communications.

**STUART WESCHLER** is Of Counsel to KamberEdelson. The efforts of Mr. Wechsler in the area of securities litigation have received considerable judicial comment. U.S. District Court Judge Alvin K. Hellerstein commented in Doney v. Command Systems, (98 Civ. 3279), in an opinion dated August 10, 1999, "I don't think it needs my comment to note that, Mr. Wechsler, you are a senior and most respected and most competent member of the securities class action bar. I would take it as a given your hours are worth the rates that you charge and that the hours that you have put in reflect the efficiency with which you work." In a report dated May 23, 1977, in Bucher v. Shumway, 76 Civ. 2420 (S.D.N.Y.), United States Magistrate Leonard Bernikow stated that "Stuart Wechsler . . . is a leading expert in securities class action litigation." Mr. Wechsler also led the team of attorneys that successfully prosecuted the class action, Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979), to a landmark decision in federal civil procedure. He was also the responsible partner in Van Gemert v. Boeing, one of the earliest actions maintained as a class action under the then newly amended Federal Rules of Civil Procedure and one of the very few securities class actions ever to go to trial and judgment. Moreover, Mr. Wechsler played an integral role in obtaining a landmark Supreme Court decision in an important phase of that action. See Boeing Co. v. Van Gemert, 444 U.S. 472 (1980).

Mr. Wechsler was admitted to the bar 1958, New York; Supreme Court; U.S. Court of

Appeals, Second, Third and Fifth Circuits; U.S. District Court, District of Arizona; U.S. District Court, Western District of Michigan. Education: University of Pennsylvania (B.S., 1953); Yale University (J.D., 1955). Editor: "Prosecuting and Defending Stockholder Suits," Practicing Law Institute, Nov., 1973. Author: "The Securities Acts Amendments of 1964," Stock Market Magazine, November, 1964; "Notice to Debenture Holders," The Review of Securities Regulation, April 15, 1976. Chairman: PLI Programs regarding class actions and stockholder suits, 1970-1977, "New Trends in Securities Litigation," 1977-79 and "Exemptions from Registration: Spinoffs-Shells and other Devices," 1970. Faculty Member, Columbia Law School Continuing Education Programs, 1979-1982. Chairman: Practicing Law Institute program, "Stockholder Suits and Class Actions," 1986; University of Virginia seminar, "Trial of a Securities Case," 1989. Lecturer, Panels on Securities Litigation and Class Actions, American Bar Association, 1975; ALI-ABA Study Course, Civil Rico Member, Board of Directors, Concert Artists Guild, 1982-1984. Member, Board of Editors, "Class Action Reports," 1977. Chairman, Securities Law Committee, Federal Bar Council, 1980-1985. Member, Committee on Second Circuit Courts of the Federal Bar Council, 1986. Member: American Bar Association; Federal Bar Council.

**JOHN BLIM** is Of Counsel to KamberEdelson. Mr. Blim is a graduate of Northwestern University School of Law, where he received his J.D. degree cum laude in 1994 and was elected to the Order of the Coif. He served as an associate articles editor on the Northwestern University Law Review from 1993 to 1994. Mr. Blim was also a member of the winning team and voted Best Speaker in the law school's moot court competition. From 1994 to 2000, he was a litigation associate at nationally recognized law firms, including Sidley & Austin.

Mr. Blim has published articles in major legal journals, and his writing has been described as "thoughtful commentary" by a leading treatise on constitutional law. Before attending law school, John earned his Ph.D. in English literature from Northwestern University, where he was also a lecturer in the school's English department.

State and federal courts have appointed John as class counsel in numerous class action cases collectively benefiting millions of individuals.

**NOTABLE CASES**

Our members have taken leading roles in the following cases:

**"NEW TECHNOLOGY" CONSUMER PROTECTION CLASS ACTIONS**

*Shen v. Distributive Networks LLC.* No. 06 C 4403 (N.D.Ill.)
Co-lead counsel in a class action alleging that defendant violated federal law by sending unsolicited text messages to the cellular telephones of consumers throughout the country. The settlement - which is the first of its kind in the country - provided each class member with up to $150 in cash.

*Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.) lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

*Abrams v. Facebook, Inc.*, No. 07-05378 (N.D.Cal.) lead counsel in settlement concerning the transmission of allegedly unauthorized mobile content.

*Zurakov v. Register.com*, No. 01-600703 (N.Y.Cty, New York)
Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering internet domain names. In November, 2003, the New York Supreme Court (trial division) granted final approval of a settlement that required Register.com to fully disclose its practices and provided the class with a relief with a collective face value in excess of $17 million.

*Kiesel v. Time Warner*, No. 809542 (Orange County Sup. Ct.)
Co-lead counsel in a representative action on behalf of thousands of apartment and condominium residents in which firewalls were breached during cable installation. The settlement provided the class with complete relief including the inspection of every multi-unit dwelling in the affected county and repair of all breached units wherever they were found.

*Weaver v. WebTV*, No. 793551 (Santa Clara Sup Ct.) co-lead counsel in a certified nationwide consumer class action case Alleging consumer fraud / deceptive advertising of computer services and capabilities. The settlement provided the class with a collective award with a guaranteed minimum face value of six millions of dollars.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

*Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cook County, Ill.)
Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

*Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cook County, Ill.)
Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

*Kim v. Riscuity*, No. 06 C 01585 (N.D.Ill)
Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

*Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D.Ill)
Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

*Chancer v. Princess Cruises*, No. BC 115472 (Los Angeles Sup. Ct.)
Co-lead counsel in a class action lawsuit challenging a cruise line's deceptive "low price guarantee" as a consumer fraud class action. The settlement provided the class with a collective award with a face value of millions of dollars.

*Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cook County, Illinois)
Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3,000,000.

*Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cook County, Illinois)
Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

*Cioe v. Lycos,* No. 02 CH 21456 (Cook County, Illinois)
Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

*Gavrilovic v. Vintacom Media Group, Inc.,* No. 04 CH 11342 (Cook County, Illinois);
Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

*McArthur v. Spring Street Networks,* 100766/2004 (NY Cty.)
Co-lead counsel in a nationwide class action suit settled under New York consumer protection statutes.

*California Reconveyance Cases*
Part of a team of attorneys who settled a series of state court class action cases under California's Reconveyance Statute. Cases settled for a collective amount of over $10,000,0000.

## INSURANCE CLASS ACTIONS

*Holloway v. J.C. Penney*, No. 97 C 4555, (N.D.Ill.)
One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to plaintiffs' class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

*Ramlow v. Family Health Plan* (Wisc.Cir.Ct.):

Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## PRODUCTS LIABILITY CLASS ACTIONS

*Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cook County, Illinois): Appointed co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provides class with full cash refunds and reimbursement of certain costs related to blood testing.

*In re Pet Foods Product Liability Litigation*, No. 07-2867 (D.NJ)
Appointed co-lead counsel in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

*In re Starlink Corn Products Liability Litigation* (N.D.Ill.)
Represented sub-class of farmers who grew recalled Starlink corn in a consolidated settlement of federal class action valued in excess of $100 million.

*Kan v. Toshiba America Information Systems, Inc.* No. BC327273 (Los Angeles Sup. Ct.)
Class counsel in a defective product / breach of warranty action concerning laptop computers. The settlement provided the class with a collective award with a face value of approximately $45,000,000.

## SECURITIES CLASS ACTIONS

*Stassi et al. v. Loch Harris et al.*, No. GN 200180 (Tex)
Brought derivative action on behalf of technology development company that successfully obtained dissolution of corporation and distribution of assets to shareholders);

*In re Command Systems*, Case No. 98-cv-3279 (S.D.N.Y.)
Brought securities class action against technology company in which participating shareholders recovered over 80% of their losses

## PRIVACY CLASS ACTIONS

*Wormley v. GeoCities*, No. 196032 (Los Angeles Sup. Ct.)
Class Counsel in consumer class action for privacy violations that is believed to be the first internet privacy case to recover a benefit for impacted class members

*Elvey v. TD AMERITRADE Inc.* (N.D.Cal.)
Pursuing class action against an Internet-based securities broker for failing to disclose a security breach which involved customer names and email addresses for over 6 million accounts.

## MASS/CLASS TORT CASES

*Aaron v. Chicago Housing Authority,* 99 L 11738, (Cook County, Illinois)
Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10,000,000.

*Sturman v. Rush Presbyterian-St.Luke's Medical Center*, 2000 L 11069 (Cook County, Ill.)
Part of team of attorneys in suit against hospital and national association of blood banks alleging failure to warn of risks of hepatits C infection as a result of past blood transfusions.

*Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D.Ind.)
Part of team of attorneys in mass suit that alleged that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke. Case settled on confidential terms.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| MICHAEL CRISSWELL, individually and on behalf of a class of similarly situated individuals, | No. 08 CV 01578 |
| Plaintiff, | |
| v. | Judge Milton I. Shadur |
| MYSPACE, INC., a Delaware corporation, | |
| Defendant. | Magistrate Judge Sidney I. Schenkier |

## NOTICE OF FILING

TO:

Blaine C. Kimrey
David R. Geerdes
Sonnenschein, Nath & Rosenthal, LLP
233 South Wacker Drive
Sears Tower
Chicago, IL 60606
(312) 876-3175
bkimrey@sonnenschein.com
dgeerdes@sonnenschein.com

PLEASE TAKE NOTICE that on the June 11, 2008, I e-filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, IL, using the CM/ECF filing system, Plaintiff's Motion for Expedited Discovery, a copy of which is attached hereto and hereby served upon you.

Respectfully submitted,

By /s/ Myles McGuire
MYLES MCGUIRE One of the Attorneys
for Plaintiff Michael Crisswell, individually
and on behalf of a class of similarly situated
individuals

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2008 the above referenced document was electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system which will send notification of such filing via email to the following:

Blaine C. Kimrey
David R. Geerdes
Sonnenschein, Nath & Rosenthal, LLP
233 South Wacker Drive
Sears Tower
Chicago, IL 60606
(312) 876-3175
bkimrey@sonnenschein.com
dgeerdes@sonnenschein.com

Dated: June 11, 2008

By: /s/ Myles McGuire
    MYLES MCGUIRE
    One of the Attorneys for Michael
    Crisswell, individually and on behalf of a
    class of similarly situated individuals

JAY EDELSON
MYLES MCGUIRE
ETHAN PRESTON
KAMBEREDELSON, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370