UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL CRISSWELL, individually and on behalf of a class of similarly situated individuals, )<br>)<br>) Plaintiff, )<br>)<br>vs. )<br>)<br>MYSPACE, INC., a Delaware corporation, )<br>)<br>Defendant. )<br>) | No. 08 CV 01578<br><br>Judge Milton I. Shadur<br>Magistrate Judge Sidney I. Schenkier |

## **MEMORANDUM IN SUPPORT OF FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS**

Defendant MySpace, Inc., respectfully submits this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff Michael Crisswell's Complaint for failure to state a claim upon which relief may be granted. The Court should dismiss Crisswell's claims, with prejudice, because: (1) they are preempted by the CAN-SPAM Act, 15 U.S.C. § 7701, *et seq*. (which provides Crisswell with no cause of action), and/or (2) MySpace is immune from Crisswell's claims under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230.

### **BACKGROUND**

On February 15, 2008, Crisswell filed a putative class action against MySpace. Crisswell alleges that MySpace sent him unauthorized text messages and provided no means to opt out of receiving future text messages. (Compl. 2, 4, 21-23.) Crisswell alleges that as a result of these text messages, he has been charged a fee of around 15 cents for each message and has lost some or all of the use of his cell phone. (Compl. 4, 14-15.) The Complaint asserts claims for tortious interference with contract (Count I), restitution/unjust enrichment (Count II), trespass to chattels

(Count III), invasion of privacy (Count IV), computer tampering in violation of 720 ILCS 5/16D-3 (Count V), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count VI).  (Compl.  32-59.)

## ARGUMENT

**I.     Rule 12(b)(6) Standards**

In considering a Rule 12(b)(6) motion to dismiss, "a court must accept all of the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in plaintiff's favor."  *See, e.g., Brown v. County of Cook*, --- F. Supp. 2d ---, 2008 WL 902938, *1 (N.D. Ill. April 4, 2008) (citing *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003)).  Although this standard is fairly protective of the plaintiff, the plaintiff still must plead "'enough facts to state a claim to relief that is plausible on its face.'"  *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

Furthermore, "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims."  *Tamayo v. Blagojevich*, --- F.3d ---, 2008 WL 2168638, *9 (7th Cir. May 27, 2008) (citing *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006)).  This occurs "'when it would be necessary to contradict the complaint in order to prevail on the merits.'"  *Id.* (quoting *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)); *see also McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (citing *Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir. 1996)).

Courts have not hesitated in granting Rule 12(b)(6) dismissal based on CAN-SPAM Act preemption.  *See, e.g.*, *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1093-94 (N.D. Cal. 2007) (dismissing as preempted under the CAN-SPAM Act claims alleging violation of California statute regulating electronic mail without requiring falsity or deception as an element);

*Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, *3 (C.D. Cal. May 23, 2007) (dismissing claim because CAN-SPAM Act was "plainly intended to preempt state laws purporting to regulate certain aspects of electronic mail communications").

Immunity under CDA Section 230 is an equally well-established ground for dismissal on a Rule 12(b)(6) motion. *See, e.g., Doe v. GTE Corp.*, 347 F.3d 655, 661-62 (7th Cir. 2003) (affirming dismissal under CDA Section 230 a claim against service provider for providing Internet access and Web hosting for others' videos); *Eckert v. Microsoft Corp.*, 2007 WL 496692, *3 (E.D. Mich. Feb. 13, 2007) (dismissing under CDA Section 230 a claim against Microsoft for allegedly failing to disassociate plaintiff's work email address from MSN online account despite repeated requests by plaintiff).

**II.     Crisswell's Claims Should Be Dismissed Because They Are Preempted by the CAN-SPAM Act and Fail to State a Claim Under the Act.**

The CAN-SPAM Act preempts laws attempting to regulate consent and opt out procedures for commercial electronic mail messages. The *sole wrong* alleged in Crisswell's complaint is that MySpace is transmitting commercial electronic mail messages without the consent of recipients and without providing a mechanism to opt out of such messages. As such, all of Crisswell's claims should be dismissed as preempted by the CAN-SPAM Act. Additionally, Crisswell cannot amend to state a CAN-SPAM Act claim because the Act does not provide a private cause of action for individual citizens such as him.

**A.     With the CAN-SPAM Act, Congress Intended to Create a "Federal Regime" and "Regulation on a Federal Basis" of Claims Relating to Consent and Opt Out Procedures for Commercial Electronic Mail Messages.**

In passing the CAN-SPAM Act, Congress sought to protect consumers from the annoyance of electronic spam while addressing the unfairness of imposing a state-by-state patchwork of inconsistent laws on entities that transmitted commercial electronic mail messages

- 3 -

across state lines. Congress recognized that hodge-podge regulation by the states was ineffective and that a national standard for consent to and opting out of such messages was necessary. As the July 16, 2003 Senate report says:

> . . . The legislation would supersede State and local statutes, regulations, and rules that expressly regulate the use of e-mail to send commercial messages except for statutes, regulations, or rules that target fraud or deception in such e-mail. Thus, a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted. Given the inherently interstate nature of e-mail communications, the Committee believes that this bill's creation of one national standard is a proper exercise of the Congress's power to regulate interstate commerce that is essential to resolving the significant harms from spam faced by American consumers, organizations, and businesses throughout the United States.

S. Rep. 108-102, at 2365 (July 16, 2003).

The legislative history leading up to passage of the CAN-SPAM Act is replete with both Senate and House expressions of intent that the CAN-SPAM Act preempts as to consent and opt out procedures for commercial electronic mail messages. The July 16, 2003 Senate Report refers to "creating a *Federal statutory regime*" and notes that "[u]nder the legislation, enforcement would be undertaken by the FTC and, in some cases, industry-specific regulatory authorities." *Id.* at 2353 (emphasis added). The Report further notes that "there is a substantial governmental interest in regulating commercial email *on a Federal basis*." *Id.* at 2358 (emphasis added). Statements by the House are consistent. *See, e.g.*, 149 Cong. Rec. H12186-02, *H12193 (2003).[1]

---

[1] Moreover, the House reports make clear that the legislation was intended to apply to mobile phone text messages. *See, e.g.*, 149 Cong. Rec. H12854-08, *H12860 (Dec. 8, 2003) ("… The same type of rules that are applicable to commercial e-mail messages sent to personal computers will clearly also apply to those sent to wireless devices, including mobile phones, and the general provisions of the bill would apply to wireless messages as they would to similar messages sent to a desktop computer.").

**B.      The Statutory Language Manifests Congress's Intent to Preempt State Regulation of Consent and Opt Out Procedures for Commercial Electronic Mail Messages.**

Consistent with its expressed intent, Congress adopted statutory language making clear that the CAN-SPAM Act created a uniform national regime for consent and opt out procedures for unauthorized commercial electronic mail messages, thereby occupying the field of regulation. For instance, the statutory findings and policy state that the numerous laws regulating unsolicited commercial electronic mail by individual states "impose different standards and requirements" and "do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail." 15 U.S.C. § 7701(a)(11). Further, because electronic mail addresses do not specify a geographic location, "it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11).

There can be no doubt that the CAN-SPAM Act applies to "unwanted mobile service commercial messages" such as those alleged here. The Act includes a section titled "Application to wireless." 15 U.S.C. § 7712. In that section, the Federal Communications Commission ("FCC") is directed to adopt regulations addressing consenting to and opting out of unwanted mobile service commercial messages. *Id.* at § 7712(b). Pursuant to that mandate, the FCC adopted such regulations, which provide a comprehensive regulatory regime to address unwanted mobile service commercial messages. 47 C.F.R. § 64.3100.

Based on its findings, Congress determined that "there is a substantial government interest in *regulation of commercial electronic mail on a nationwide basis*." 15 U.S.C. § 7701(b)(1) (emphasis added). To promote this goal of uniformity, Congress provided a broad preemptive mandate:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1). The use of the word "supersedes" exhibits a broad preemptive force as to all regulation of electronic mail to send commercial messages, with a very limited carve-out for rules related to falsity or deception.

The CAN-SPAM Act savings clause preserves state claims not specific to "electronic mail, including State trespass, contract, or tort law; or . . . other State laws to the extent those laws relate to acts of fraud or computer crime." 15 U.S.C. § 7707(b)(2). The savings clause is silent on situations in which a plaintiff asserts facts that are specific to "electronic mail to send commercial messages" but cloaks what is truly a CAN-SPAM Act claim (related to whether a plaintiff consented to or was offered an opportunity to opt out of commercial electronic mail messages) in various state statutory and tort monikers. Congress's clearly expressed objective to preempt a broad array of claims, however, demonstrates that the CAN-SPAM Act provides the exclusive regulatory scheme for redress of any claim arising solely out of unwanted receipt of "electronic mail to send commercial messages."[2]

### C.     Crisswell's Claims Fall Squarely Under the CAN-SPAM Act.

Crisswell cannot escape through artful pleading CAN-SPAM Act preemption where his claims exclusively concern consent and opt out procedures related to alleged sending of unauthorized commercial electronic mail messages. "A plaintiff may not frame his action under

---

[2]     Court decisions are consistent with this congressional intent. For instance, in *Omega World Travel, Inc. v. Mummagraphics, Inc.*, the Fourth Circuit held that a state consumer protection act claim was preempted because the harm alleged fell within the CAN-SPAM Act. 469 F.3d 348, 353-56 (4th Cir. 2006); *see also Gordon v. Virtumundo, Inc.*, 2007 WL 1459395, *13 (D. Wash. May 15, 2007) (holding that state consumer protection act claim was preempted because harm alleged was that under email claim).

- 6 -

state law and omit federal questions that are essential to recovery." *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992) (citations omitted). Courts may "look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Id.*

Crisswell brings his suit allegedly to "stop defendant's practice of transmitting unauthorized text messages." (Compl. at Preamble.) Crisswell further alleges that MySpace transmits such messages "without regard to whether the recipient wants to receive text messages" and while refusing "to tell recipients how to opt-out of receiving future text messages." (*Id.* at ¶ 1.) And Crisswell asserts that these messages are "commercial." (*Id.* at ¶ 12.) The *sole wrong* alleged in Crisswell's complaint is that MySpace is transmitting commercial electronic mail messages without the consent of recipients and without providing a mechanism to opt out of such messages.[3] This is precisely the sort of conduct that the CAN-SPAM Act regulates. *See, e.g.*, 15 U.S.C. § 7712; 47 C.F.R. § 64.3100.

With respect to the CAN-SPAM Act's carve-out from preemption at 15 U.S.C. § 7707(b)(1), Crisswell alleges no facts establishing falsity or deception. In fact, the two sample messages Crisswell provides refer specifically to MySpace. (Compl. ¶ 21.) The CAN-SPAM Act's savings clause also does not apply because Crisswell has not alleged any wrong beyond

---

[3] Crisswell's claim for tortious interference with a contract (Count I) is based on "unauthorized charges," and the only unauthorized charges alleged are from unauthorized text messages. (*See* Compl. ¶¶ 14, 35.) Crisswell's claim for restitution/unjust enrichment (Count II) alleges MySpace has received money from "unauthorized mobile content charges." (Compl. ¶ 38.) Crisswell's claim for trespass to chattels (Count III) alleges that MySpace "gained access to Plaintiff's wireless handset," presumably via unauthorized text messages. (Compl. ¶ 42.) Crisswell's claim for invasion of privacy (Count IV) alleges that MySpace intruded on Crisswell's solitude "through its transmission of unauthorized mobile content." (Compl. ¶ 46.) Crisswell's claim for computer tampering in violation of 720 ILCS 5/16D-3 (Count V) alleges a violation based on the "insertion of . . . unauthorized mobile content." (Compl. ¶ 52.) Crisswell's claim for violation of ICFA (Count VI) references only the "conduct alleged above," and the only conduct alleged is MySpace's alleged transmission of unauthorized electronic messages. (Compl. ¶ 57.)

that addressed exclusively by the Act, namely the sending of unauthorized commercial electronic mail messages.

By raising no argument to the contrary, Crisswell tacitly acknowledged in his Motion to Remand[4] that his common law counts are preempted. (*See generally* Remand Memo.) With respect to the state statutory counts, Crisswell has contorted the law to argue that those claims survive the CAN-SPAM Act's preemptive force. For instance, Crisswell asserts a claim under the Computer Crime Prevention Law ("CCPL"), arguing that text messages are "programs" that harm a computer. (Compl. ¶ 51.) But a "program" is defined by the CCPL as "a series of coded instructions or statements in a form acceptable to a computer which causes the computer to process data and supply the results of the data processing." 720 ILCS 5/16D-2(b). A text message is, if anything under the CCPL, "data," separately defined by the CCPL as "a representation of information, knowledge, facts, concepts or instructions, . . . which is prepared in a formalized manner and is stored or processed in or transmitted by a computer. Data . . . may be in any form including but not limited to printouts, magnetic or optical storage media, punch cards or data stored internally in the memory of a computer." 720 ILCS 5/16D-2(c). Despite his reference to "programs," Crisswell actually concedes that text messages are data, alleging that cellular phones "accept, process, store, retrieve and output *data*" and referring repeatedly to "*unauthorized mobile content*." (*See, e.g.*, Compl. ¶¶ 50-53 (emphasis added).) Because 720 ILCS 5/16D-3(a)(4) (involving insertion of programs) does not give rise to a claim for

---

[4] In the face of a denial based on the Class Action Fairness Act, Crisswell withdrew his Motion to Remand, but presumably in response to this Motion to Dismiss, he will maintain some of the same arguments against preemption.

transmission of data, Crisswell's artful pleading attempt to avoid CAN-SPAM Act preemption is unavailing.[5]

Crisswell's arguments regarding ICFA are similarly flawed. (Remand Memo 6-7.) In support of the ICFA claim, Crisswell asserts no facts separate from those involving the transmission of commercial electronic email messages without consent or opt out procedures. (*See* Compl. at Count V.) Nor does he explain how MySpace's alleged conduct was either fraudulent or deceptive. Instead, Crisswell merely adopts by reference in the ICFA count the allegation that MySpace transmitted electronic spam without consent or an opt-out procedure — the very core of CAN-SPAM Act regulation.

In artful pleading scenarios such as this, numerous federal courts (including one circuit court) have found that preemption applies.[6] Given the expressions of preemptive intent in the

---

[5] If any sections under the CCPL did apply, they would be 720 ILCS 16D-3(a)(5) and (b)(4) because they deal specifically with "unsolicited bulk electronic mail." 720 ILCS 16D-3(a)(5) and (b)(4). Crisswell, however, has not invoked these sections, presumably because they are limited to instances involving falsity or forgery in transmission or routing information, which Crisswell has not alleged. (*See generally* Complaint.)

[6] *See Omega World Travel, Inc.*, 469 F.3d at 353-56 (4th Cir. 2006) (holding that (1) even though Oklahoma statute regulated falsity in emails, CAN-SPAM Act preempted because alleged misrepresentations were immaterial, and that (2) state consumer protection act claim was similarly preempted because harm alleged was that under email claim); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1093-94 (N.D. Cal. 2007) (finding California statute addressing email preempted); *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, *3-4 (C.D. Cal. May 23, 2007) (finding California statute addressing email preempted); *Gordon*, 2007 WL 1459395 at *12-13 (holding that (1) even though Washington Commercial Electronic Mail Act regulated falsity, CAN-SPAM Act preempted that act because plaintiff's claims did not allege falsity and that (2) state consumer protection act claim was similarly preempted because harm alleged was that under email claim); *see also ASIS Internet Serv. v. Optin Global, Inc*., 2008 WL 1902217, *19 (N.D. Cal. April 29, 2008) (citing *Kleffman*, 2007 WL 1518650).

All three cases cited by Crisswell in footnote 3 of the Remand Memo finding the absence of ordinary preemption are easily distinguishable. (Remand Memo 5 n.3.) *Free Speech Coalition* involved allegations of computer crime. *Free Speech Coalition, Inc. v. Shurtleff*, 2007 WL 922247, *1-2 (D. Utah May 23, 2007). There are no factual allegations of criminal conduct in this case. (*See generally* Complaint.) *Impulse Marketing* involved statutory language regarding domain name spoofing and false or misleading subject lines, which are not alleged in this case. *Gordon v. Impulse Marketing Group, Inc.*, 375 F. Supp. 2d 1040, 1045 (E.D. Wash. 2005); *see generally* Complaint. Moreover, *Impulse Marketing*

.


CAN-SPAM Act statutory language and legislative history and the nature of Crisswell's allegations (even if accepted as true), the Court should find all of Crisswell's claims preempted.

### D.    The CAN-SPAM Act Does Not Provide a Cause of Action by Crisswell.

In light of CAN-SPAM Act preemption, Crisswell cannot proceed on his claims as currently pled. Nor can Criswell bring a CAN-SPAM Act claim because the Act does not provide any private cause of action for private citizens. Only the FTC, various other federal agencies, a state attorney general on behalf of residents, or providers of Internet access services may bring lawsuits enforcing the CAN-SPAM Act. 15 U.S.C. § 7706. Crisswell does not allege any facts that suggest he is anything other than a citizen of Illinois, and as such, he has no private cause of action under the CAN-SPAM Act. *See Gordon*, 2007 WL 1459395, at *8 (dismissing CAN-SPAM Act claim because plaintiff was not an Internet access provider and therefore had no private cause of action); *see also Madorsky v. Does 1-10*, 2006 WL 1587349, *2 (N.D. Ohio June 8, 2006) (dismissing the complaint because the CAN-SPAM Act does not provide standing for an individual private citizen to file a private cause of action).

Because all of Crisswell's claims are preempted by the CAN-SPAM Act and the Act does not provide him a cause of action, all claims should be dismissed with prejudice.[7]

---

involved no analysis of the underlying claims and was limited by a later more robust Washington federal court CAN-SPAM Act preemption finding addressing the exact same state statute and email marketing. *Gordon*, 2007 WL 1459395, *12 (W.D. Wash. May 15, 2007). Finally, *Beyond Systems* involved domain name spoofing and false or misleading subject lines, which, again, are not alleged here (as already noted, the sample email language offered by Crisswell specifically identifies MySpace). *Beyond Sys., Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 537-38 (D. Md. 2006); *see also* Complaint at ¶ 21.

[7]    Crisswell's being left without a cause of action for unwanted receipt of commercial electronic mail messages should be of no moment. Courts often find ordinary preemption in the face of leaving a plaintiff without a remedy. *See, e.g., Schafer ex rel Wexler v. Exelon Corp.*, 2007 WL 4557815, *7 (N.D. Ill. Dec. 21, 2007). ("Plaintiffs imply that . . . preemption of state law claims leaves . . . consumers without a remedy. . . . The lack of a court remedy is the consequence of a federal statutory scheme assigning [the federal agency] the exclusive authority to determine a reasonable rate.") (citations omitted); *Mason v. Smithkline Beecham Corp.*, 2008 WL 1835350, *8 (C.D. Ill. Apr. 23, 2008) ("The Court is also cognizant of the fact that the conclusion that the state law claims presented in this case are preempted

### III. Crisswell's Claims Should Be Dismissed Because CDA Section 230 Immunizes MySpace from Liability for the Conduct Alleged.

CDA Section 230 shields interactive computer services such as MySpace from liability for messages sent by third parties, which is precisely the conduct complained of by Crisswell. (*See* Compl. ¶¶ 1, 12.)  The key section of the CDA states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  CDA preemption dictates that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) ("The CDA preempts state law that is contrary to [Section 230(c)].").

In *Chicago Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, the Seventh Circuit recently held that CDA Section 230 protected Craigslist, a Web site popular for allowing users to submit and view housing, sales, and social activity postings, from liability as publisher of the content provided by its users. 519 F.3d 666, 671 (7th Cir. 2008) (citing *GTE Corp.*, 347 F.3d 655 (7th Cir. 2003)).  In doing so, the court likened online services to "common carriers . . . because they neither make nor publish any discriminatory advertisement, *text message*, or conversation that may pass over their networks." *Id.* at 668 (emphasis added); *see also Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1169 n.24 (9th Cir. 2008) (Under CDA Section 230, a Web site operator is likely immune from state and federal claims for "passive acquiescence in the misconduct of its users . . . even if the

---

effectively leaves Plaintiffs with no legal remedy . . . .  However, not all tragedies have legal remedies, and the Court cannot ignore the law in order to achieve a more compassionate result."). Moreover, Crisswell is free to submit a complaint to the FTC.  15 U.S.C. § 7706; FTC Consumer Complaint Form, https://rn.ftc.gov/pls/dod/wsolcq$.startup?Z_ORG_CODE=PU01 (last visited May 27, 2008).

users committed their misconduct using electronic tools of general applicability provided by the website operator.").

Crisswell has alleged all the elements necessary to prove that any alleged conduct on behalf of MySpace is protected by CDA Section 230. An "interactive computer service" is defined in the statute as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Crisswell alleges that MySpace is an online social networking company that links people through its Web site. (Compl. ¶ 1.) Furthermore, MySpace has previously been held to be an interactive computer service for purposes of Section 230 protection. *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 846 (W.D. Tex. 2007) ("[I]t is clear that MySpace meets the statutory definition of [an interactive computer service].") *aff'd*, 2008 WL 2068064 (5th Cir. May 16, 2008).

By contrast, an "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Here, Crisswell alleges that the MySpace members cause the text messages to be sent (Compl. ¶ 1) and that the members post the messages on MySpace (Compl. ¶ 12). While Crisswell alleges that MySpace converts the messages posted by users into a different technological format, the MySpace server "automatically transmits" the message. (Compl. ¶ 12.) Therefore, MySpace is not generating the content; it is just passing the content along.[8] The MySpace members, not MySpace, are the information content providers.

---

[8] In fact, Crisswell himself alleges "Defendant MySpace, Inc. is an online social networking company that distributes 'mobile content,' such as *user-generated* blog entries, friend requests, news and other data (collectively, 'content') to cellular telephones." (Compl. ¶ 7 (emphasis deleted).)

Crisswell's allegations about MySpace are analogous to the facts in *Craigslist* and when accepted as true, establish that MySpace is an online service that merely transmits the messages its users generate. As discussed above, all of Crisswell's claims arise out of transmission of electronic messages. *Supra* p. 7. CDA Section 230 protects MySpace from liability for this alleged transmission of others' messages and requires that all of Crisswell's claims be dismissed, with prejudice.

## **CONCLUSION**

For the foregoing two independent reasons, defendant MySpace, Inc. respectfully requests that the Court dismiss Crisswell's Complaint in its entirety, with prejudice.

Dated: June 13, 2008

Respectfully submitted,
MYSPACE, INC.
By: /s/ David R. Geerdes
One of its attorneys

Blaine C. Kimrey (ARDC # 6279625)
David R. Geerdes (ARDC # 6289557)
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606
(312) 876-8000

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2008, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.

     /s/ David R. Geerdes
David R. Geerdes
Attorney for defendant MySpace, Inc.